[Civ. No. 19492.   Second Dist., Div. One.   Oct. 22, 1953.]

Estate of JOHN RIDGELY MARSHALL, JR. MARGARET DUPRAY, as Guardian, etc., Petitioner and Respondent, v. THE SECURITY-FIRST NATIONAL BANK (a National Trust and Savings Association), as Executor, etc., Respondent; LORRAINE BRIDGES MARSHALL, Individually and as Guardian, etc., Appellant.

LeSage & Bowman, Thomas W. LeSage and Harry M. Bowman for Appellant.

George L. Hampton for Petitioner and Respondent.

WHITE, P. J.—This is an appeal by Lorraine Bridges Marshall, guardian of the person of Diane Marshall, a minor, from a decree in an heirship proceeding.

The factual background surrounding this litigation may be thus epitomized. John Ridgely Marshall, Jr., died testate on January 27, 1950. In his will he failed to mention Sharon Bunn, a minor, hereinafter referred to as "Sharon." In the aforesaid heirship proceeding before the superior court, sitting in probate, it was decreed and adjudged that Sharon was the legitimate daughter of decedent. An appeal from such decree is prosecuted by Diane Marshall, a minor, admittedly a legitimate daughter of decedent, by and through her guardian of the *person*, Lorraine Bridges Marshall. The Security-First National Bank of Los Angeles, as executor of the will of decedent and as guardian of the *estate* of Diane Marshall, prosecuted no appeal from the decree and appears herein as a respondent.

The record reflects that decedent and Margaret Dupray (who appears herein as guardian of Sharon) were married in 1939. Respondent, Diane Marshall, admittedly legitimate, was born January 19, 1941. On December 18, 1941, decedent commenced an action for divorce against respondent Margaret Dupray, alleging separation of the parties on August 16, 1941. Both parties were represented by their respective counsel. An interlocutory judgment of divorce was obtained by decedent on February 18, 1942, and a final judgment on March 18, 1943, the decedent being awarded custody of Diane. The respondent Margaret Dupray gave birth to the child Sharon on November 23, 1942. On the birth certificate it was stated that the father of Sharon was Theodore Leroy Bunn, a colored entertainer. Lorraine Bridges Marshall, who appears herein as guardian of the person of Diane Marshall, was married to decedent in August, 1946.

Respondent Margaret Dupray testified that although she and decedent had separated prior to the commencement of the divorce action, subsequently thereto on December 23, 1941,

she returned to the home of decedent and on the same day her mother arrived at the home. That from the last mentioned date until some time in April or May of 1942, she, decedent, the daughter Diane, and respondent Margaret Dupray's mother, Frances Carson, all resided together in decedent's home on Carson Road in Beverly Hills, decedent and respondent Margaret Dupray occupying the one bedroom.

We shall first give consideration to respondent's motion to dismiss the appeal of Lorraine Bridges Marshall (individually) upon the ground that she is not a party aggrieved by the decree; that the decree declares her interest in the estate to be exactly as she alleged it to be in her statement of interest filed with the probate court.

Respondent also moves to dismiss the appeal of Lorraine Bridges Marshall as guardian of the person of Diane Marshall, a minor, upon the ground that the guardian is not a party aggrieved by the decree; that the same decrees the interest of Diane Marshall to be exactly as alleged in the statement of interest filed by the Security-First National Bank as guardian of her estate; and further, that Lorraine as guardian of the person is not a party to the record; that Diane was represented in the probate court by the bank as guardian of her estate, and the bank has not taken an appeal on her behalf; that the guardian of the person is not qualified by law to maintain an appeal on behalf of the minor.

Appellant in her objections to the motions shows by affidavit:

1. That the will of decedent created a trust for Diane containing a provision that should Diane not survive a certain age the trust should terminate and the trust estate be distributed to Lorraine.

2. That Lorraine filed in the probate court a statement of her interest in which she denied that Sharon was a daughter of decedent.

3. That Lorraine filed, individually and as guardian of the person objections to the petition for support of the child Sharon; that the guardian of the estate (the bank) failed to object.

4. That the petition for support and the heirship proceeding were heard together by stipulation, and the trial court, finding Sharon to be the lawful child of decedent, awarded support of $200 per month for 30 months; that as a result of the decree of paternity Lorraine, as a contingent beneficiary under the will, suffered a possible loss of $6,000.

5. That under the terms of some trusts in Illinois, if Sharon

is legitimate, Diane will have to share equally with her in the proceeds of such trusts.

In an heirship proceeding such as the one now before us, each claimant is the adversary of the other (Prob. Code, § 1080; *Estate of Friedman*, 173 Cal. 411, 413 [160 P. 237]; *O'Day* v. *Superior Court*, 18 Cal.2d 540, 544 [116 P.2d 621]).

We are satisfied that appellant's contention that a beneficiary under a trust is an interested and aggrieved party and entitled to appeal from an order which adversely affects his interest must be sustained (*Estate of Plaut*, 27 Cal.2d 424 [164 P.2d 765, 162 A.L.R. 837]; *Estate of Silver*, 92 Cal. App.2d 173 [206 P.2d 895]).

Concerning the right of Lorraine as guardian of the person of Diane to prosecute the appeal on behalf of the minor when the bank as guardian of the minor's estate failed to appeal, we are impressed that the language in *Estate of O'Donnell*, 85 Cal.App.2d 1, 13 [192 P.2d 94, 193 P.2d 143], is persuasive, if not determinative of the question here presented. In the cited case, O'Donnell, an inebriate, was committed to Mendocino State Hospital. The Department of Mental Hygiene of the State of California appealed from an order made in an estate in which the incompetent had an interest. The court on appeal upheld the right of the department to appeal as a creditor, but also said (p. 13):

"But the department stands in another and far more important light. O'Donnell has been legally committed to its care. The department is the custodial guardian of the person of O'Donnell. The department in this case is trying to give its ward the protection which should have been given him by his guardian, the attorney for his guardian, and the trial court. No niceties of just who is appealing should deprive the incompetent of his right to the protection of the court. . . ."

Further, in support of the proposition that Lorraine as custodial guardian has the right to protect by appeal the rights of her minor ward notwithstanding the failure of the guardian of the minor's estate to act, is the fact that a minor who must necessarily appear by his guardian is not bound by the admissions or actions of a guardian which mean the sacrifice or giving away of the ward's property (*Berry* v. *Chaplin*, 74 Cal.App.2d 652, 657 [169 P.2d 442]).

Manifestly, a minor is not foreclosed from his right of appeal because of the action of a guardian of the estate in deciding not to take an appeal, and the custodial guardian should be accorded the opportunity to appeal in order to

protect said minor's rights. Furthermore, in the instant proceeding the parties recognized and treated Lorraine in her representative capacity as guardian of the person of Diane, as a party to the action. ▋ In the absence of objection in the trial court, on appeal, due representation of a minor litigant will be presumed (*Neilson* v. *Walker*, 105 Cal.App. 23, 27 [286 P. 1091]). The motions to dismiss the appeal of Lorraine Bridges Marshall, individually, and as guardian of the person of Diane Marshall, a minor, should therefore be denied.

▋ . On the appeal upon the merits there is involved the correctness and propriety of the trial court's rulings on the admission of evidence proffered by appellant.

Section 1962, subdivision 5, of the Code of Civil Procedure provides: "The issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate."

Appellant first contends that the trial court erred in limiting the evidence to direct testimony on the issue of cohabitation and access, and arbitrarily applied a (nonexistent) conclusive presumption of cohabitation.

The record reflects that at a very early stage of the trial, the court stated: "In order that we may keep the record straight, you may first proceed in connection with this birth, and dispose of the question as to whether or not the husband of Mrs. Dupray, that is, the decedent, the then husband had access to her during this time in question. If I decide that he did not, then these other matters may be relevant as to who she claims the father is or states who he is, these other statements which may have been made in connection with it, but in the event that I hold that he did have access to her during this period, then it becomes immaterial as to who else may have had access to her. The conclusive presumption will then apply, and it won't be necessary to go into the matter or attempt to prove who the true father was, if there was such access."

Several times during the trial the court restated the order of proof that it would follow. An instance of this occurred when counsel for appellant Mrs. Marshall inquired of her, "Is it not a fact, Mrs. Marshall, that on numerous occasions during your married life and before, Mr. Marshall, in effect, stated to you that Sharon was the daughter of a colored man by the name of Theodore Bunn?" In ruling upon an objection to the question, the court said: ". . . I will sustain the objection and we will try first the issue of whether or not

they were cohabiting during this period. If I find that they were, then I will not permit this other evidence. If I find that they were not, then you may bring in this evidence. You are not using this witness for the purpose of showing that there was no cohabitation, I take it.''

In answer to a statement then made by appellant's counsel that, ''. . . just because Mrs. Dupray (respondent guardian of the person and estate of Sharon) says there was cohabitation, that doesn't bind the court in any way, shape or form,'' the court replied: ''Not at all. You are entitled to meet it, and I want you to meet that issue. It is just in the same manner as in a personal injury suit, where we try the issue of negligence without damage, because if there is no negligence, there are no damages. I think it is easier to try the issue in this way unless it is shown that some prejudice will ensue by reason of the absence of some particular witness, which you may be relying upon, but I think I will limit the testimony at this particular time to the matter of whether or not these parties were cohabiting together at the time this child was conceived.''

After further discussion concerning the rulings limiting the testimony to direct evidence as to whether decedent Marshall had physical access to Mrs. Dupray, the court said: ''Whether they had access is a matter of fact. It can be proved by witnesses who saw them either living together or saw that he was living somewhere else at this time. If he was living somewhere else, and you have evidence to prove it, then there is a direct conflict, but that would be the sort of evidence which would be relevant to the question.''

We are persuaded that the order of the court limiting the testimony to direct evidence on the issue of cohabitation and opportunity of access was a matter of the order of proof and almost entirely within the discretion of the trial judge (*Estate of McNamara*, 181 Cal. 82, 101 [183 P. 552, 7 A.L.R. 313]).

Appellant also offered in evidence a birth certificate, the information contained in which was furnished by respondent Margaret Dupray. The certificate recited that the minor Sharon Bunn was born to Margaret Dupray on November 23, 1942, and that the father of Sharon was Theodore Leroy Bunn, a colored entertainer. Objection to the introduction into evidence of the document was sustained.

From the foregoing, we are satisfied that there was no error in the ruling of the court regulating the order of proof by

requiring each party to produce whatever evidence they had on the matter of opportunity for access and cohabitation during the period that Sharon would normally have been conceived, and refusing to admit other evidence, until all of the testimony relating to the matter of cohabitation and access between decedent and respondent had been adduced.

We are also persuaded that the rulings sustaining objections to the introduction of statements made during his lifetime by decedent Marshall as to the paternity of Sharon and of the birth certificate were correct. Evidence is inadmissible to rebut a conclusive presumption and illegitimacy cannot be established by such evidence when, as here, there was direct and uncontradicted testimony of opportunity of access to the wife by the husband during the period conception would normally occur. Under such circumstances (with exceptions not here applicable) the presumption of legitimacy is conclusive. Furthermore, had the birth certificate been admitted into evidence, the fact that Theodore Bunn appears thereon as father is only prima facie evidence of the fact (Health & Saf. Code, § 10551), was open to contradiction and must fall before the conclusive and indisputable presumption above referred to (*Hill* v. *Johnson,* 102 Cal.App.2d 94, 95, 96 [226 P.2d 655], and cases therein cited).

There was positive and direct evidence by respondent that she and decedent were cohabiting during the period that Sharon would normally be conceived, and this evidence was corroborated by the testimony of two other witnesses. Since appellant produced no evidence in contradiction thereof, the cases relied upon by her are distinguishable and not helpful under the circumstances here present.

As to the aforesaid admissions of decedent, we are satisfied that respondent having proven circumstances showing cohabitation and an opportunity for access, the obligation then rested upon appellant to furnish some evidence of noncohabitation and absence of opportunity of access, before declarations of paternity, either oral or written, were admissible.

Appellant next urges that the conclusive presumption of paternity does not apply in the case of miscegenation. In *Estate of McNamara, supra,* page 96, the court said: "There is one class of cases where it is recognized in this country at least, that the husband is not to be taken as the father of a child, even though he had intercourse with his wife during the normal period of conception. That instance is where the husband and wife are of the same race, as for

instance, white, and it appears that the wife has had intercourse with a man of another race, as, for instance, a negro, and the *child is of mixed blood*. (Citing cases.)'' (Emphasis added.)

Conceding that the above statement correctly states the law, it could have no application to the case at bar. Appellant offered no evidence that Sharon was of mixed blood. The only reference thereto was when the court made the observation, ''I didn't want to say this while the child was here: For the record the Court has observed that the child exhibits no Negroid features whatever, so far as her physical appearance is concerned. Her hair is straight, she appears somewhat on the blonde side, much lighter than her mother.'' And again when the court declared, ''There has been some intimation that the child was the child of a member of the Negro race. The Court has viewed the child, and that was significant, because the child exhibited none of the traits of the Negro race, neither in the color of her skin nor of her hair. The hair was straight. Let the record show that the youngster was an attractive youngster of nine years and her coloring was apparently lighter than her mother's and her hair, in particular, was considerably lighter and her eyes were brown. Although her eyes were brown, she was hardly a brunette.''

Since there was no evidence at all except the indisputable presumption, as to paternity, it can hardly be said that the question of miscegenation was an issue in the case.

Pursuant to section 956a of the Code of Civil Procedure, and rule 23, Rules on Appeal, appellant has made a motion in this court to take additional testimony. The testimony sought to be taken is that of Theodore Bunn, the colored entertainer described in the birth certificate as the father of Sharon. The motion is based on the fact that on January 7, 1953, said Bunn testified in custody proceedings in the *Matter of the Estate of Diane Marshall*, a minor, and that his testimony establishes that he and Margaret Dupray cohabited continuously from 1941 to 1947, which testimony is directly contrary to the testimony of Margaret that she cohabited with Bunn only for five or six months and cohabited with the decedent from the latter part of December, 1941, to March or April, 1942.

In the opposition to the motion, it is pointed out by affidavit of respondent's counsel that appellant proceeded to trial without objection, made no request for a continuance to secure

the testimony of Bunn, nor represented to the court that she had unsuccessfully attempted to take the deposition of Bunn.

It further appears from the affidavit in opposition to the motion, that respondent's counsel and Mr. LeSage, one of counsel for appellant, journeyed to San Francisco to take the deposition of Bunn on May 2, 1952, but that Bunn failed to appear. Trial of the instant proceeding commenced on May 15, 1952. Respondent points out that Bunn is a musician and a ''headliner'' at some place of entertainment, either in Los Angeles, San Francisco, or some nearby town, and that his whereabouts could have been ascertained by the use of slight diligence.

Respondent also contends there has been unreasonable delay in making the application, pointing out that judgment was entered on June 20, 1952; notice of appeal was filed on August 28, 1952, and the present motion was not filed until July 28, 1953.

The testimony of Bunn taken in the custody proceeding on January 7, 1953, merely creates a conflict with the testimony of respondent and her mother, Mrs. Carson, as to cohabitation and opportunity of access during the period from December, 1941, to March or April, 1942.

The proposed additional evidence would accomplish no more than to add to the conflicts now existing in the evidence. Even though the motion to take additional testimony was granted, and the testimony taken, it would not justify this court in making a finding or findings contrary or additional to those of the trial court, and thereupon to direct the entry of a different judgment. The purpose of section 956a is not to convert appellate courts into triers of fact (*Tupman* v. *Haberkern,* 208 Cal. 256, 269, 270 [280 P. 970]; *Estate of Schluttig,* 36 Cal.2d 416, 421, 422, 423 [224 P.2d 695]); but to enable those tribunals to make contrary or additional findings to the end that the judgment be affirmed or modified and affirmed and the litigation be terminated, or to reverse the judgment with directions to enter judgment for the appellant (*Tupman* v. *Haberkern, supra,* p. 269).

For the foregoing reasons, the motions to dismiss the appeal of Lorraine Bridges Marshall in her individual and representative capacities, are denied, the motion to take additional testimony is denied, and the decree from which this appeal was taken is affirmed.

Doran, J., and Scott (Robert H.), J. pro tem., concurred.