John J. McCall, J.
The above-named respondent has moved for summary judgment pursuant to CPLR 3212 asserting that there is no triable issue of fact, that the only question to be resolved is a legal one and the resolution of that question should result in the dismissal of the petition. It is the contention of the respondent that where it appears without contradiction that the petitioner was a married woman at the time of the conception of the baby involved, she cannot institute proceedings under section 512 of the Family Court Act and therefore her petition must be dismissed.
Section 512 of the Family Court Act defines a child born out of wedlock as “ a child who is begotten and born out of lawful matrimony ’ ’. This section is the portion of the Family Court Act constituting the successor section to former section 119 of the Domestic Relations Law. That section stated: “ 1. A child born out of wedlock is a child begotten and born: (a) Out of lawful matrimony; (b) while the husband of its mother was separate from her a whole year previous to its birth; or (c) during the separation of its mother from her husband pursuant to a judgment of a competent court. ” It is the contention of the respondent that the Legislature, in enacting section 512 and omitting therefrom paragraphs (b) and (c) of former section 119 of the Domestic Relations Law intended (a) to create a conclusive presumption that a child born to a married woman is legitimate, *1051 (b) that proof of nonaccess is no longer permissible to rebut this presumption, (c) that only an unmarried woman is a proper person to petition pursuant to section 512. In the Matter of Kehn v. Mainella (40 Misc 2d 55) the Family Court of Rensselaer County did hold that section 512 made it impossible for a married woman to question the paternity of a child born to her while married. It is to be noted that the court in that case was faced with the question as to whether section 512 of the Family Court Act or section 119 of the Domestic Relations Law applied. A full trial of all the issues was held and the court held the respondent not to be the father. The court stated it made no difference which statute applied for the proof would sustain a dismissal under section 119, and section 512 required a dismissal as a matter of law. This situation would seem to weaken the force of the Kehn case as a precedent but in any event this court is not g'oing to follow it for reasons that will hereinafter appear. The court in Kehn placed reliance on the statement in Lovelace v. Arcieri (17 A D 2d 465) that born out of lawful matrimony means, “a child born to an unmarried woman”. The court there was dealing with paragraph (a) of subdivision 1 of former section 119 and held that a married mother was covered by paragraph (b). Who can say what paragraph (a) would mean in the absence of (b) ? Furthermore, the court there held the proof in the matter justified a dismissal of the complaint pursuant to paragraph (b) and hence there is no force of precedent in the decision. It would seem that the meaning of section 512 is still an open question as far as appellate courts are concerned.
The Legislature, in enacting section 512, could have meant by “ out of lawful matrimony ” either (a) a child born to an unmarried woman or (b) a child not conceived by her husband born to any woman. Once the legislative intention is determined here the instant problem has been solved. The Legislature, in enacting the Family Court Act, was writing entirely new over-all legislation and any one section should be interpreted to give utility and reasonableness to every other section and to the statute as a whole. Section 531, dealing with paternity proceedings, says: “ If the mother is married both she and her husband may testify to nonaccess ”. If the court finds that the Legislature under section 512 intended to bar married women from instituting proceedings, it likewise must find that the Legislature enacted an unneeded and useless provision in section 531. Section 531 was a substantial re-enactment of section 126 of the Domestic Relations Law that had provided for nonaccess testimony. In carrying over the old law, the Legislature must have *1052 intended that married women still would be parties in paternity proceedings. Why have procedural rules if there is to be no procedure?
Other portions of the Family Court Act deal with support proceedings. Traditionally in these instances under former laws, a husband sued as a father for support, could raise the question of legitimacy. Section 436- of the Family Court Act permits nonaccess testimony by husband or wife. Section 418 permits respondents to demand blood tests leading to their exclusion as fathers. All of the sections dealing with support proceedings are successors to those sections of the Children’s Court Act and the Domestic Relations Court Act that provided procedures whereby support would be sought against husbands alleged to be parents. In all of those proceedings the respondent father could put in issue the legal relation between himself and the child and although the married man was faced with a strong presumption against him, the door to proof was not closed. Sections 436 and 418 of the Family Court Act would seem to continue this right in the father. If a married woman cannot name another as the father, then the husband must be conclusively presumed to be the father. If this be so, sections 436 and 418 become meaningless and useless. Such an interpretation, too, burdens a husband with his wife’s transgressions and lets the adulterers go free. The Legislature was drawing a new, comprehensive statute. Would it for a second time include useless sections? It is difficult to say that it would make husbands absolutely responsible for all children born to their wives simply because of the marriage. Legitimacy must be protected, but not to a point beyond reason and fact, and necessity. Indeed, legitimacy is protected by the strong, though rebuttable presumption surrounding it. Intention to stamp the presumption as conclusive must not be attributed to the Legislature unless it be expressed in clear and unequivocable terms. Such expression is lacking in the words of section 512.
The respondent in urging that section 512 is entirely new substantive law quotes the counsel to the Legislative Committee on Court Reorganization: ‘1 Drafting the Family Court Act involved * * * a revision and restatement of the substantive law in * * * paternity proceedings ” (McKinney’s 1962 Session Laws of New York, p. 3694). The respondent urges that by eliminating (b) of old section 119 of the Domestic Relations Law, the Legislature and the committee intended to limit the section to unmarried women. The committee’s comment on section 512, as appearing in McKinney’s Consolidated Laws of *1053 New York (Book 29-A, Family Ct., p. 244) states: “ The existing law also defines a 1 2child born out of wedlock ’ to include one begotten and born 1 while the husband and its mother were separated * * * for a whole year * * * or during the separation * * * pursuant to a judgment of a competent court. ’ These provisions bear on proving whether the child was ‘ begotten and born out of lawful matrimony. ’ The normal rules of evidence should apply ’ ’. In other words, the change was not a narrowing down of the meaning of “ out of lawful matrimony ”, but rather a change in applicable rules of evidence and procedure in reaching the conclusion the husband of the mother was not the father of the child. The comment of the committee must at least have been called to the attention of the Legislature, at least to the point where it can be said the Legislature did not intend the change as called for by the respondent.
Under section 512 this married petitioner can assert that the respondent is the father of the child. Fie denies the fact. There is a triable issue of fact as to the paternity and the motion is denied.