[S. F. No. 22379.   In Bank.   Aug. 11, 1967.]

GARLAND JACKSON, Plaintiff and Appellant, v. JACKIE CAROL JACKSON, Defendant and Respondent.

Cullen A. Stinnett for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

McCOMB, J.—This is an appeal by plaintiff-husband in what was originally an annulment suit from the order of the trial court denying a motion to cancel all previous orders by which he was directed to pay attorney's fees, maintenance, and court costs.

*Facts*: Plaintiff, aged 21, and defendant were married in Nevada on November 9, 1964. They returned to California to live. On the morning of November 13, less than four days after the marriage ceremony, plaintiff discovered that his wife had left him. They have had no contact since that date.

Plaintiff filed suit for annulment in the Superior Court of San Joaquin County, alleging that his wife had no intent to live with him at the time they were married. Defendant answered with a denial and also alleged that she was pregnant with plaintiff's child. She asked for attorney's fees plus support and maintenance for herself and the unborn child.

The Superior Court of San Joaquin County ordered plaintiff to pay $50 per month for the support of defendant, prenatal care, hospital expenses and counsel fees. On defendant's motion the case was transferred to Stanislaus County, and after the child was born the court ordered plaintiff to pay hospital expenses, $50 per month child support, and to comply with the previous order of the San Joaquin County Superior Court with respect to counsel fees. The court also ordered plaintiff, defendant, and the child to submit to blood tests.

The tests were taken and, according to plaintiff's sworn affidavit, demonstrated that plaintiff could not have fathered the child. Plaintiff moved the court to terminate all prior court orders for support, doctor and medical expenses, and submitted the results of the blood tests as evidence in support of his motion.

The couple cohabited only three and one half to four days, and it is conceded that the child was born approximately nine months thereafter. The trial judge refused to admit the blood

tests in evidence and denied the motion to terminate support payments.

Question: *Were the blood tests admissible in evidence?*

*Yes.* In *Kusior* v. *Silver,* 54 Cal.2d 603 [7 Cal.Rptr. 129, 354 P.2d 657], we held that blood tests were inadmissible *to prove the husband had not fathered the wife's child in circumstances where the conclusive presumption applied.*[1] █ This is so because the so-called conclusive presumption is really not a presumption but rather a rule of substantive law.

*Kusior* v. *Silver, supra,* 54 Cal.2d 603, is not applicable to the facts of the present case. The judgment in that case was reversed because the plaintiff, who claimed that a man other than her husband fathered her child, was prejudiced by the court's instruction defining "cohabiting." It was essential to the plaintiff's case to exclude her husband, from whom she had separated, as the father. The court instructed that the conclusive presumption (Code Civ. Proc., § 1962, subd. 5, now Evid. Code, § 621) applied if the husband, who had vacated the family home but visited his wife before, during and after the period of probable conception, had "access" or "reasonable possibility of access" to his wife during the period of conception. Before the jury could apply the conclusive presumption that the husband was the father, they would have to have found cohabitation between husband and wife. Because of the erroneous definition of "cohabiting," it was reasonably probable that the jury improperly determined that the husband was the father. In reversing, we held that "cohabiting" means to "dwell or live together as husband and wife" (pp. 612-613 [3]) and if husband and wife are not in fact residing together, an exception to the application of the conclusive presumption arises; the presumption is rebuttable and blood test evidence may be admitted to rebut it (p. 620 [14]).

█ It is settled that the husband is entitled to avoid the operation of the "conclusive presumption" by proof that although there was cohabitation it was impossible that the child was conceived during the period of cohabitation. (*Estate of McNamara,* 181 Cal. 82, 91-97 [183 P. 552, 7 A.L.R. 313];

---

[1]Section 621 of the Evidence Code restates without substantive change former section 1962, subdivision 5, of the Code of Civil Procedure, as follows: "Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent, is conclusively presumed to be legitimate."

*Estate of Walker,* 180 Cal. 478, 491 [5] [181 P. 792]; *Estate of Marshall,* 120 Cal.App.2d 747, 753 [262 P.2d 42].)

■ The ruling of the trial court in the present case denied plaintiff a fair opportunity to prove that defendant's child was not conceived during the three and one half to four days the couple cohabited. If he is permitted to put in evidence the blood test results, then he could offer other evidence to prove that the child was not conceived during his brief cohabitation with his wife.

The couple were honeymooning in their apartment. Plaintiff was undoubtedly in the presence of his wife during most of this time and he should be able to account for her actions and whereabouts during the three and one half to four days of married life. Plaintiff must prove that the child was not conceived during the brief cohabitation; he must prove that it was not conceived when *he* was having sexual intercourse with his wife. The blood tests are evidence of this.

■ Blood grouping tests are scientifically reliable when used to exclude a male as a possible father. (*Kusior* v. *Silver, supra,* 54 Cal.2d at p. 617.) The adoption of the Uniform Act on Blood Tests to Determine Paternity (Stats. 1953, ch. 1426, p. 3013, now Evid. Code, §§ 890-897) is a recognition of the scientific reliability of such tests. (See also concurring opinion of Mr. Justice Fourt in *Wareham* v. *Wareham,* 195 Cal.App. 2d 64, 79-83 [15 Cal.Rptr. 465]; Schatkin, Disputed Paternity Proceedings (3d ed. 1953) pp. 289-356; Witkin, Cal. Evidence (1966) § 657, p. 618.)

*Kusior* v. *Silver, supra,* 54 Cal.2d 603, correctly holds, on the facts of that case, that the presumption of Evidence Code section 621 is not so much a conclusive presumption as it is a rule of substantive law that a husband will be treated as the father of a child born to his wife and conceived while they were cohabiting. It makes no difference whether the husband is the biological father, for the basis of the inquiry is whether he is the legal father of the child; he must be given a chance to prove that he is not the legal father by demonstrating the impossibility that the child was conceived during his cohabitation with his wife. In the instant case plaintiff was denied this opportunity.

■ When the issue is whether the child could possibly have been conceived during cohabitation, the evidentiary rule is "any competent evidence relevant to the question is admissible." (*Estate of Walker, supra,* 180 Cal. at p. 491 [5].)

In the present case the blood tests were relevant, since they prove that conception did not occur at various times during the four-day cohabitation, that is, the moments when the newlyweds were engaged in sexual intercourse.

The order is reversed.

Traynor, C. J., Peters, J., and Mosk, J., concurred.

BURKE, J.—I dissent. Under section 621 of the Evidence Code, "Notwithstanding any other provisions of law," defendant's baby son, born as "the issue of a wife cohabiting with her husband, who is not impotent, is conclusively presumed to be legitimate."

The opinion of the majority declares otherwise. It rules that such a child may be declared illegitimate if blood tests indicate that the husband could not have fathered the child. This ruling jeopardizes the integrity of the marriage state. It pierces the protective shield which the law has heretofore placed around children born to married couples and subjects their status as the legitimate issue of their parents to the vagaries of test tubes and chemistry. Heretofore it has been the public policy of this state, supported by the courts (see *Kusior* v. *Silver* (1960) 54 Cal.2d 603 [7 Cal.Rptr. 129, 354 P.2d 657]) that the greater good to be served is to preserve the legitimacy of children born to married people cohabiting together from attack.

However, the effect of today's ruling is to add another exception, based on blood test evidence, to the conclusive presumption of legitimacy set forth in section 621 of the Evidence Code, and this despite the most convincing proof— recognized and spelled out in *Kusior*—that the Legislature considered and rejected such an exception. In *Kusior* this court declined to accept the argument that blood test results allegedly showing that the husband could not have fathered the child should be made an exception to the rule, and specifically held (pp. 616-620 of 54 Cal.2d) that such tests may not be used to controvert the conclusive presumption of paternity created by the Legislature. (See also *Hill* v. *Johnson* (1951) 102 Cal.App.2d 94 [226 P.2d 655].) When the Evidence Code was adopted in 1965 (following our decision in *Kusior*) former subdivision 5 of section 1962 of the Code of Civil Procedure was restated as section 621 of the Evidence Code with no change whatever in substance, thereby further demonstrating a lack of intent on the part of the Legislature

to allow the conclusive presumption to be negated by blood test evidence.[1]

Plaintiff in the present case does not contend that he was impotent or that he did not cohabit with his wife, the only two situations in which the statute by its own terms makes the conclusive presumption inapplicable. The child was concededly born approximately nine months after cohabitation of the parties, i.e., the period of gestation was a normal one. I am convinced that the trial court was correct in ruling that under such circumstances the conclusive presumption of legitimacy precluded consideration of any blood tests whatever.

The order appealed from should be affirmed.

Tobriner, J., and Sullivan, J., concurred.

---

[1]It may be noted that the following excerpt from plaintiff's brief discloses certain of the factors which may have motivated the Legislature in failing to make blood test evidence admissible as against the conclusive presumption: ''It is submitted that in a search for the truth our modern procedure should be to admit the blood tests and *also admit* a searching cross-examination, because, as with any other item that may be taken or sent to a laboratory for examination, there is always a possibility of error. Such matters as (1) although not a great possibility, the containers could have been mislabeled; (2) the failure to see the agglutenation, particularly if it is weak; (3) proper control of temperatures; (4) use of too concentrated or diluted an antiserum, or red cell suspension solution; (5) allowing too much or too little time for the reaction to occur; (6) too much or too little centrifugal force which is required in some tests; (7) the deterioration or contamination of anti-serums; (8) deterioration of blood tested, especially if it has been stored too long or exposed to extreme hot or cold; (9) chemical solutions in which the agglutenation takes place being improper for the specific anti-serum; and (10) biological errors, using in [*sic*] rare groupings of blood and lack of information on these types.''