[Civ. No. 30379.   Second Dist., Div. Three.   Dec. 28, 1967.]

KATHY SUSANNE HESS, a Minor, etc., Plaintiff and Respondent, v. LUTHER C. WHITSITT, Defendant and Appellant.

Eric A. Rose for Defendant and Appellant.

Robertson & Hand and Dent N. Hand, Jr., for Plaintiff and Respondent.

FORD, P. J.—In an action to establish the paternity of a minor child, Kathy Susanne Hess, and to secure an order for her support, the trial court determined that the defendant Whitsitt was the father of the child and ordered support. Mr. Whitsitt has appealed from the judgment.

The findings of fact pertinent on this appeal are: 1. Ruby Hess is the natural mother of the child. 2. The defendant is the natural father of the child. 3. At the time of the conception of the child, Ruby Hess was married to Wesley O. Hess and was cohabiting with him. 4. At the time of such conception Mr. Hess was not impotent. 5. Mr. and Mrs. Hess are Caucasians. 6. Mr. Whitsitt, the defendant, is a Negro. 7. The child ''is of mixed blood, evidencing both Negro and Caucasian characteristics, and bears a close physical resemblance to defendant.''

Ruby Hess testified that she had had sexual intercourse many times with the defendant over a period of time which began in July 1960, and continued until the last part of August or possibly into the first several weeks of September of that year. Her last menstrual period prior to the birth of the child was in August 1960, and in the following month she discovered that she was pregnant. The child was born on May 25, 1961.

Mrs. Hess further testified that Mr. Hess was a Caucasian. She had no Negro blood of which she was aware. Prior to the time of her first act of sexual intercourse with the defendant and continuously thereafter until 1962, Mrs. Hess was living with her husband. In the period of time during which she had sexual intercourse with the defendant she also engaged in sexual intercourse with her husband.

The record discloses that at the trial the appearance of the child was as follows: ''a female child of approximately four years of age with a chocolate-colored skin color and black hair, dark brown eyes and generally features characteristic of the Negro race.'' Mrs. Hess was described as being ''a 24-year-old female, fair complexion, blonde chestnut hair, blue-green eyes, generally evidencing Caucasian characteristics.''

Mrs. Hess testified that Mr. Hess was the father of her two older children. They were present at the trial and were described for the record as being ''fair-skinned with blue eyes and light hair, generally exhibiting Caucasian features.''

■ At the time of the trial subdivision 5 of section 1962 of the Code of Civil Procedure was as follows: ''Notwithstanding any other provision of law, the issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate.''[1] In *Kusior* v. *Silver,* 54

---

[1]Section 621 of the Evidence Code restates without substantive change that statutory provision. (*Jackson* v. *Jackson,* 67 Cal.2d 245, 247, fn. 1 [60 Cal.Rptr. 649, 430 P.2d 289].)

Cal.2d 603, 616 [7 Cal.Rptr. 129, 354 P.2d 657], "cohabiting" was construed to mean "living together as husband and wife." Such a conclusive presumption constitutes a substantive rule of law. (*Kusior* v. *Silver, supra,* at page 619.)

It is to be noted that the statutory presumption applicable when the wife is cohabiting with her husband is subject to only one express exception, that of impotency of the husband. But in *Estate of McNamara,* 181 Cal. 82 [183 P. 552, 7 A.L.R. 313], by way of dictum the Supreme Court mentioned an exception which has been denominated a "racial difference" exception. (Comment (1962) 35 So.Cal.L.Rev. 437, 446-447.) It was expressed as follows (181 Cal., at page 96) : "There is one class of cases where it is recognized in this country at least, that the husband is not to be taken as the father of the child, even though he had intercourse with his wife during the normal period of conception. That instance is where the husband and wife are of the same race, as for instance, white, and it appears that the wife has had intercourse with a man of another race, as, for instance, a negro, and the child is of mixed blood. (*Watkins* v. *Carlton,* 10 Leigh (Va.) 560; *Bullock* v. *Knox,* 96 Ala. [195] 198 [11 So. 339]; *Wright* v. *Hicks,* 12 Ga. [155] 161 [56 Am.Dec. 451]; *Cross* v. *Cross,* 3 Paige (N.Y.) 139 [23 Am.Dec. 778].) The reason why the conclusive presumption is not applied in such instances is that the element of indeterminability which is the reason for the presumption in the ordinary case is absent. It is clear that the husband is not the father. The actual fact, in other words, is capable of definite determination, and for this reason the conclusive presumption which is a substitute for such determination is not properly applicable."

The *McNamara* dictum has been criticized on the ground that it is not supported by a satisfactory scientific basis[2] and

---

[2]In a note and comment Professor Armstrong stated: "The opinions in both the above cases [*Estate of Walker,* 180 Cal.478, 484 [181 P. 792], and *Estate of McNamara,* 181 Cal. 82, 96 [183 P. 552, 7 A.L.R. 313]] were written during the same year by Justice Olney and concurred in by a court possessing identical personnel. The passage of 30 years since their rendition has brought with it added knowledge in the field of genetics, especially with reference to the unreliability of physical stigmata as proof of race. It may be doubted in the face of contemporary scientific doctrine whether the court would still feel that 'impossibility' of paternity could be so definitely established by the physical appearance of the child as to justify judicially reading into CCP § 1962, subsec. 5, the exception suggested in the dicta of the *Walker* and *McNamara* cases." (2 Armstrong, California Family Law (1953) pp. 891-892.) Professor Armstrong advocated the addition of an exception to section 1962 of the Code of Civil Procedure expressed in the following language: "The conclusive presumption of legitimacy shall not apply when blood

has also been questioned from the standpoint of statutory construction.[3] For reasons which will be stated we have reached the conclusion that the *McNamara* dictum does not correctly state the law of California as to the conclusive presumption. ▮ We hold that a racial difference exception was not embodied in subdivision 5 of section 1962 of the Code of Civil Procedure.

The reasoning of *Kusior* v. *Silver, supra,* 54 Cal.2d 603, furnishes guidance. Mrs. Kusior contended that instructions with regard to the conclusive presumption should not have been given at all in view of the fact that the blood tests showed that her husband could not have been the father of the child. She argued that the conclusive presumption is subject to well-recognized exceptions and that blood tests should be added to the exceptions. She relied principally on the explanation for the exceptions set forth in *Estate of McNamara, supra,* 181 Cal. 82, at page 96, quoted hereinabove: "The reason why the conclusive presumption is not applied in such instances is that the element of indeterminability which is the reason for the presumption in the ordinary case is absent. . . . The actual fact, in other words, is capable of definite determination, and for this reason the conclusive presumption which is a substitute for such determination is not properly applicable." (54 Cal.2d at pp. 616-617.)

That argument was rejected in the *Kusior* case. The Supreme Court stated (54 Cal.2d at p. 617) that "the actions of the Legislature have clearly established the effect of the blood-grouping tests in relation to the application of the conclusive presumption to be otherwise."[4]

group analysis indicates that paternity by the husband would be impossible.''

[3]Dean Hale stated: "This statement is both challenging and certainly challengeable, if it has reference to what may be held under the California code provision (Code Civ. Proc., sec. 1962(5)). If the spouses are cohabiting, the code makes provision for only one exception to the rule of conclusive presumption of legitimacy, viz., the impotency of the husband. Under the well-established rules of statutory construction, *expressio unius,* etc., there can be no basis for reading into it another exception, such as would be necessary under the rule enunciated in this dictum, notwithstanding the reasonableness, on principle, of the suggested rule." (Hale, *Proof of Facts of Family History* (1950) 2 Hastings L.J. 1, 17-18.)

[4]In *Kusior* the Supreme Court further stated (54 Cal.2d, at pages 617-618): ". . . the Legislature in 1953 enacted our version of the Uniform Act on Blood Tests to Determine Paternity, providing: 'In a civil action, in which paternity is a relevant fact, the court . . . may . . . order the mother, child and alleged father to submit to blood tests.' (Code Civ. Proc., § 1980.3 [substantially the same provision is now in section 892 of the Evidence Code].) 'If the court finds that the con-

The intent of the Legislature not to affect the conclusive presumption does not imply a legislative doubt as to the scientific reliability of blood tests. If such a doubt had existed the Uniform Act would not have been adopted. (See *Jackson* v. *Jackson,* 67 Cal.2d 245, 248 [60 Cal.Rptr. 649, 430 P.2d 289].) The reasonable conclusion to be drawn is that the legislative intent was that there should be no encroachment upon the conclusive presumption by means of such tests even though the use thereof would serve the purpose of substantially lessening or overcoming "the element of indeterminability" (the phrase found in *McNamara*).

It cannot be said that evidence of the nature of that to which reference is made in the *McNamara* dictum is of greater probative value than that furnished by resort to blood tests. Judicial comment upon the existence of a racial difference exception to the conclusive presumption has never risen above the nature of dictum in California. ▮ The doctrine of *stare decisis* does not apply to dictum. (*Childers* v. *Childers,* 74 Cal.App.2d 56, 61-62 [168 P.2d 218] ; see *Ball* v. *Rodgers,* 187 Cal.App.2d 442, 449-450 [9 Cal.Rptr. 666].) ▮ We find no reasonable basis for construing subdivision 5 of section 1962 of the Code of Civil Procedure or section 621 of the Evidence Code as evidencing a legislative intent that the conclusive presumption—actually a rule of substantive law—should be subject to any exception not specifically set forth therein. There is no sound basis for the judicial creation of a racial difference exception. ▮ "When the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Estate of Simmons,* 64 Cal.2d 217, 221 [49 Cal.Rptr. 369, 411 P.2d 97]. )

The judgment is reversed.

Cobey, J., and Moss, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 21, 1968. Peters, J., was of the opinion that the petition should be granted.

---

clusions of all the experts . . . are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly.' (Code Civ. Proc., § 1980.6 [the provision is now in section 895 of the Evidence Code].) However, the Legislature significantly refrained from adopting section 5 of the Uniform Act, which provides: 'The presumption of legitimacy of a child born during wedlock is overcome

_____

if the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, show that the husband is not the father of the child.' Our law emerged without this section or any reference to the subject matter contained therein. . . . [I]t is apparent that the failure of the Legislature to enact that part of the act which would specifically have enabled the result of a blood test to overcome the conclusive presumption declared in section 1962, subdivision 5, must be deemed an intention not to change the rule stated in *Hill* v. *Johnson, supra* [102 Cal.App.2d 94 (226 P.2d 655)].''