**V. L. P., Mother, Petitioner,**

v.

**J. S. S., Respondent.**

Family Court of Delaware,
New Castle County.

Submitted July 6, 1978.

Decided Aug. 23, 1978.

Robert W. Willard, Wilmington, for petitioner.

Karl J. Parrish, Wilmington, for respondent.

WAKEFIELD, Judge.

This is the Court's decision with respect to the paternity aspect of the above-captioned support case.

The child in question was born on May 21, 1966. The parties were married on April 9, 1966 and a Mexican divorce was granted on the respondent's petition on April 6, 1967.

Apparently, although the testimony on dates is somewhat conflicting, the parties did have sexual relations during the period of possible conception. At least respondent does not deny this. When he learned later that petitioner was pregnant, he thought he was the father and, under certain parental pressures, they were married about six weeks before the birth of the child. They never did live with each other, either before or after the marriage, one of the reasons

---

being that petitioner was upset that respondent told petitioner's mother of her pregnancy before she did. Although they saw each other socially for a short while after the birth of the child, respondent never lived with petitioner, and never paid support. The last contact between them before this action was begun was a letter from respondent to petitioner dated August 23, 1966 to which petitioner never responded. While she claims that she tried to locate respondent, this is somewhat incredulous, because not only did respondent live in the Wilmington area during all or most of the intervening years, but he also had relatives here.

Having heard "some things about her" after that time, when confronted with this lawsuit, at respondent's request a blood test was performed and the report, dated March 24, 1978, was admitted into evidence. The report stated in part: "Mr. S. is conclusively excluded as the father of this child, C. P. S., on the basis of the tests performed." A retest has been ordered on the basis of certain alleged possible irregularities in the first test, but those results have not yet been received. Hence the case is not yet ready for final disposition, except for the legal issues presented here, and for the purpose of this opinion the Court will assume that the retest will produce the same conclusion as the first test.

Had no blood test been performed, the Court would have to conclude from the evidence that respondent was the father of the child because there is no evidence whatsoever that anyone else had intercourse with petitioner during the period of possible conception, and the respondent himself admits to such intercourse.

The parties have submitted excellent briefs on the legal questions presented.

■ 1. *I hold that the presumption of legitimacy of a child born during wedlock is a rebuttable and not a conclusive presumption under certain circumstances, at least where the marriage occurred well after the period of possible conception.*

In the case of *Kusior v. Silver,* 54 Cal.2d 603, 7 Cal.Rptr. 129, 354 P.2d 657 (1960), cited by both parties, the court considered the case of a child born on July 29, 1954, nine days after the entry of a final decree of divorce dissolving the marriage of the plaintiff and her husband. Plaintiff sued respondent for support of a child which she claimed was his. Plaintiff and her husband testified that sexual relations between them had ceased in February 1953 but that her husband had continued to visit his wife and daughter. Blood tests established that plaintiff's husband could not have been the father of the child but that respondent was within the class of persons who could have been.

The *California Code of Civil Procedure* § 1962 subdivision 5, provides that the issue of a wife cohabiting with her husband, who is not impotent, is indisputably presumed to be legitimate. The statute is made applicable to all children born within ten months of the dissolution of the marriage. The trial court instructed the jury that if they found that the husband had access or a reasonable possibility of access to his wife during the period of possible conception, that they must find for the appellant, since the child would then be considered by law to be legitimate. The California Supreme Court reversed on the grounds of improper instructions to the jury. The court held 7 Cal.Rptr. at 133, 354 P.2d at 661 that cohabitation means "the living together of a man and woman ostensibly as [a] husband and wife." A rebuttable presumption of legitimacy arose from the husband's visits with his wife, rather than a conclusive presumption, since he did not cohabit with her although he did have access or a reasonable possibility of access to his wife. The results of the exclusionary blood tests were therefore admissible as evidence.

Delaware has no such statute as that which guided the court in *Kusior;* however, if the same reasoning were to be followed, the presumption in the instant case would be rebuttable rather than conclusive, since plaintiff and respondent at no time "cohabited," although petitioner and respondent did have sexual relations during

the period of possible conception, which may make the *Kusior* case distinguishable.

In *Jackson v. Jackson*, 67 Cal.2d 245, 60 Cal.Rptr. 649, 430 P.2d 289 (1967), cited by the respondent, the court addressed the issue of whether blood tests are admissible to show the impossibility that a child was conceived during cohabitation. *Jackson* was originally a suit for annulment by the husband. The husband denied paternity of a child born nine months after their marriage. Husband and wife cohabited for three and one-half days after their marriage, after which the wife deserted him. The trial court refused to admit the evidence of blood tests, holding that the child, under California Law (§ 1962 subdivision 5), was conclusively presumed to be that of the husband. The Supreme Court of California reversed, holding that plaintiff should be allowed to admit the results of blood tests as evidence that the child was not conceived during the three and one half day period of cohabitation. The reasoning of the court was that the plaintiff could account for the actions of his wife during their brief cohabitation. If she did not become pregnant by him at that time, then she did not become pregnant during cohabitation, thus a rebuttable rather than a conclusive presumption of legitimacy existed. The plaintiff was held not to be the father, since a rebuttable presumption is conclusively rebutted by an exclusionary blood test under *California Code of Civil Procedure*, § 1980.6. *Jackson* was decided based on the same statute as *Kusior, supra*. It is evident that the Supreme Court in *Jackson* made an effort to avoid the operation of the conclusive presumption in the face of an exclusionary blood test result.

*Hansom v. Hansom*, N.Y.Ct.App., 75 Misc.2d 3, 346 N.Y.S.2d 996 (1973), cited by respondent, holds that children born in wedlock are presumed to be legitimate, and that it is the burden of the respondent to come forward with clear and convincing evidence establishing that someone other than the respondent is the father. Respondent husband had been paying support for all six children during the separation. Respondent claimed that the last three children were not his and he therefore requested a modification downward. Petitioner and respondent separated somewhere between 1952 and 1955. Petitioner claimed that they continued to have sex until 1971. The court ordered a blood test, the results of which excluded the respondent from being within the class of people who could have fathered two of the children. Discussing the presumption of legitimacy, the court cited *Anonymous v. Anonymous*, N.Y.Fam. Ct., 43 Misc.2d 1050, 252 N.Y.S.2d 797 (1964), which held that:

> "The presumption of legitimacy, at one time in the law, was held to be unrebuttable and conclusive. It is now an ordinary evidentiary presumption which can be overcome by competent proof such as an exclusion of paternity by a blood grouping test, as in this case."

In *People ex rel. Gonzalez v. Monroe*, 43 Ill.App.2d 1, 192 N.E.2d 691 (1963), the court held that the presumption of legitimacy of a child born in wedlock "is not absolutely conclusive but has great force and vigor and can only be overcome by clear and convincing proof." In *Gonzalez*, a paternity action, plaintiff claimed that her husband did not father her child. The facts showed that plaintiff and her husband were living in the same house and were easily accessible to each other at the time the child was conceived. These facts, the court held at 694:

> "[R]aises a strong presumption that the child born to the plaintiff on March 10, 1960 is legitimate and the burden of overcoming this presumption is with the plaintiff and such presumption can only be overcome by strong satisfactory and conclusive evidence that the child was not that of her lawful husband."

The testimony of the plaintiff was held to be insufficient evidence that the husband was not the lawful father of her child. There was no mention of any blood test in this case.

In *Sylvia v. Ben*, 70 Misc.2d 572, 334 N.Y.S.2d 229 (1972), the petitioner sued to have her child, though conceived and born

during her first marriage, to be declared the natural child of her second husband, with whom she was having an affair at the time of the conception and birth of the child. The court ordered blood tests, the results of which excluded the first husband but did not exclude her second husband. The court in holding the second husband to be the natural father gave the following reasoning at 233:

> "It is apparent, therefore, that the presumption of legitimacy, while losing none of its cogency and still serving its laudable purposes, is nonetheless just another legal presumption, an inference to be used in the absence of conclusive evidence to the contrary, access in the days of Judge Cardozo, blood tests today, and who knows what tomorrow may bring. . . . The presumption of legitimacy was never intended to suppress the truth and perpetuate a falsehood, which, I conclude, would be the result if it were allowed to control the decision in this case."

Thus, the court here contends that an exclusionary blood test result rebuts the presumption of legitimacy. It should be noted, however, that in this case the finding that the first husband was not the natural father did not leave the child without a means of support, unlike the case at bar.

In *Anonymous v. Anonymous*, N.Y.App. Div., 1 A.D.2d 312, 150 N.Y.S.2d 344 (1956), the plaintiff husband discovered five years after the birth of twins that he was not their father. Plaintiff sued to have the defendant declared the father of the children. The court held that a blood test should be performed to determine whether plaintiff could be the father, despite the fact that he cohabited with his wife during the period of conception, gestation, birth and for five years afterward. The court explained its decision at 348:

> "Reason and logic, as well as a recognition of the modern advances in science, compel a determination that the presumption is not conclusive but rebuttable. The probative value of the results of skillfully conducted blood grouping tests has been widely accepted."

The following cases are those most favorable to the petitioner on the issue of presumption of legitimacy.

In *Rasco v. Rasco*, Mo.App., 447 S.W.2d 10 (1969), the Kansas City Court of Appeals considered the case of a husband who claimed that his wife had committed adultery and that he was not the natural father of the fifth child born to them. The Rascos separated nine months and nine days prior to the birth of the fifth child. A blood grouping test revealed that petitioner was excluded from the class of persons who could have been the father of the fifth child. The trial court found for the alleged father, but the court of appeals reversed the decision, citing the fact that the doctor administering the test would not say that it was impossible that petitioner fathered the fifth child. The court cited *Ash v. Modern Sand and Gravel*, 234 Mo.App. 1195, 122 S.W.2d 45, 50, 51 (1938), which held:

> "Such presumption in favor of the legitimacy of children born in wedlock is the strongest known to the law, and the courts in their righteous zeal to protect the innocent offspring will not permit this presumption to be overthrown unless there is no judicial escape from such a malign conclusion.
>
> "To overthrow this presumption the evidence must show conclusively that the husband, by reason of absence or otherwise, could not have had sexual intercourse with the wife at the beginning of any reasonable period of gestation."

The decision of the court was clearly influenced by their distrust of the blood test, as shown by their reasoning at 17, 18:

> "Many commonly recognized scientific truths of yesterday have become discarded and disproved myths of today. Examples of this fact can be found in almost every field—from the purely religious to the coldly scientific—and including astronomy and evolution. The scientists of years ago solemnly expressed their expert opinions that the earth was flat, that man could never fly or enter outer space, or cause a baseball to curve. Furthermore, we have heard and seen, on too many

occasions, too many experts take exactly opposite opinions on the same question for us to blindly accept as gospel truth every expressed expert opinion."

In *Gustin v. Gustin,* 108 Ohio App. 171, 161 N.E.2d 68 (1958), appellee informed appellant that she was pregnant by another man. Appellant chose to marry appellee anyway. Following a divorce, appellant sought to avoid support by claiming that the child was illegitimate. The court held that when one marries a woman knowing her to be pregnant with another man's child, he has placed himself in *loco parentis* to that child and may not later seek to bastardize the child. However, this case was based on an Ohio statute providing that a mother may not institute a bastardy action against the child's natural father when she had previously married a man who knew her to be pregnant. The *Gustin* case is further distinguishable in that the respondent in the case at bar believed the child to be his.

In *Hartford National Bank and Trust Co. v. Prince,* 28 Conn.Sup. 348, 261 A.2d 287 (1968), an action brought by a trustee under a will, to determine the legitimacy of one of the children of the testator, the court held that the presumption of legitimacy of the child was conclusive unless non-access during the period of possible conception could be proven.

In *Gray v. Rose,* 32 A.D.2d 994, 302 N.Y. S.2d 185 (1969), the plaintiff claimed that appellant (not her husband) was the father of her child. Plaintiff was separated from her husband at the time of conception but continued to have intercourse with him. She also was having relations with appellant. The court held that where there is no court decree of separation or divorce, access must be clearly negated. The court cited *Matter of Findlay,* 253 N.Y. 1, 170 N.E. 471, 472: "The presumption of legitimacy of the child of a married mother is one of the strongest known to law."

In *Hill v. Johnson,* 102 Cal.App.2d 94, 226 P.2d 655 (1951), plaintiff, a minor child, sued respondent for support. Plaintiff's mother was living with her husband at the time of conception and continued to live with her husband. Under the same statute described in *Kusior, supra,* and *Jackson, supra,* the court held that plaintiff was conclusively presumed to be the child of his mother's husband.

In *Hall v. Rosen,* 50 Ohio St.2d 135, 363 N.E.2d 725, the mother sued on behalf of herself and her minor child against the child's biological father, seeking support. The plaintiff had remarried her former husband, being pregnant by a second man at the time. The plaintiff then sought support from the defendant. The court held that the biological father could not be held for the child's support where the mother contracted marriage with another who married her with full knowledge of her condition and thereby consented to stand in *loco parentis* to the child. The court reasoned that this had been the rule since 1855 and stated the courts should be predictable. The dissent in this case (decided 4–3) contended that the decision deprived the child of his right to be supported by his natural father.

In considering the obvious split of authority in other jurisdictions, this Court believes that the better rule of law, absent statutory guidance, is that the presumption of legitimacy of a child born during wedlock is a rebuttable, rather than a conclusive, presumption.

■ 2. *I hold that the presumption of legitimacy of a child born during wedlock is conclusively rebutted by a blood test performed by competent medical personnel which states that the alleged father is conclusively excluded as the father.*

There are three views on this issue. The first is that blood tests excluding paternity are entitled to the same weight as other evidence. See: *Arais v. Kalensnikoff,* 10 Cal.2d 428, 74 P.2d 1043 (1961); *Berry v. Chaplin,* 74 Cal.App.2d 669, 169 P.2d 442 (1946). This view appears to be greatly in the minority.

The second view is that the results of blood tests should be given great weight. See: *Commonwealth v. Gromo,* 190 Pa.Super. 519, 154 A.2d 417 (1959); *Beck v. Beck,* Colo., 384 P.2d 731 (1963).

The third rule is that in the absence of evidence of a defect in testing methods, blood grouping tests are conclusive on the issue of paternity. See: *Anonymous v. Anonymous,* N.Y.App.Div., 1 A.D.2d 312, 150 N.Y.S.2d 344 (1956); *Jordan v. Davis,* 143 Me. 185, 57 A.2d 209 (1948); *Houghton v. Houghton,* 179 Neb. 275, 137 N.W.2d 861 (1965). This rule, in view of the proven reliability of blood grouping tests (see Shatkin, *Disputed Paternity Proceedings,* 4th ed., 11.01–11.06) appears to be the best reasoned view.

The discussion of this issue in 46 A.L.R.2d at 1027 supports this position:

"The best reasoned rule would seem to be this: blood grouping test results which establish non-paternity are conclusive on the issue except where the evidence is such as to support a jury finding that because of a defect in the testing methods employed in a particular case (or because of a failure to show that the tests were properly conducted), the results of the tests could not be accepted as accurately reflecting the operation of immutable laws of genetics."

The view that the results of a blood test which excludes paternity are conclusive is supported also by *Jackson v. Jackson, supra, Kusior v. Silver, supra, Hansom v. Hansom, supra,* and *Sylvia v. Ben, supra.* See also Shatkin, *Disputed Paternity Proceedings, supra,* § 10.01–10.03.

The only question, therefore, is whether the blood drawing and testing in the case at bar were defective in any respect. Although she has no evidence to support it, petitioner believes that there may have been some mix-up in the blood samples because she left the room after her own blood was drawn and before her sample was labeled and before those of the respondent and the child were drawn. She believes that respondent's wife, who is a nurse, may have caused a substitution to be made. Since so much depends on these tests in view of the holds made above, the Court has ordered retests of all three parties. But if the result is the same, unless petitioner can show some defect in the tests or testing procedure, the Court holds that the exclusion is conclusive and absolute.

3. *Assuming that the blood test conclusively excludes the respondent from the group of persons who might be the father, I hold that the evidence in this case does not establish an estoppel to deny paternity nor an express or implied promise to treat the child as his own or to support the child.*

The petitioner asserts that the nature of the respondent's voluntary acts, i. e., sexual intercourse and marriage, should now estop respondent from claiming that the child is not his. Petitioner admits in her brief that the argument is novel and cites no cases or authorities to support this view.

In *Gursky v. Gursky,* N.Y.Supr., 39 Misc.2d 1083, 242 N.Y.S.2d 406 (1963), plaintiff husband sued for an annulment and separation. Plaintiff had signed an agreement to have his wife artificially inseminated. The purpose of the agreement was to provide a child for the mutual happiness of both parties. The court held that the husband was liable for support based on a theory of either implied contract or on the doctrine of equitable estoppel "rests upon the word or deed of one party upon which another rightfully relies, and, so relying, changes his position to his injury." Respondent had agreed to be artificially inseminated because her husband had expressed to her that he desired a child, and by his agreement to the procedure of artificial insemination, respondent implied to his wife that he would accept the child as his own.

In the case at bar, petitioner did not make any statements or commit any acts upon which petitioner relied to her detriment. Petitioner did not become pregnant after respondent agreed to marry her; rather, she was pregnant *before* he asked her. Petitioner has not argued that she suffered any loss or liability or changed her position to her injury in any way as a result of the marriage to petitioner.

In *Wener v. Wener,* N.Y.Supr., 35 A.D.2d 50, 312 N.Y.S.2d 815 (1970), petitioner and respondent secured a child for adoption.

The child was never formally adopted when the parties separated. Petitioner sued for divorce and support. The court held that the petitioner secured the child for adoption with the consent of the respondent. The implication was that the child was to be adopted as their own. The court found the respondent responsible for support on both a contract theory and an estoppel theory. The reasoning of the court was similar to that in *Gursky v. Gursky, supra.* The petitioner relied upon the respondent's express and implied intentions to accept the child as his. He may not later deny the commitment he made to petitioner and the child.

The case can again be distinguished from the case at bar in that the petitioner was pregnant prior to any commitment made by the respondent. The petitioner has not explained how she has acted to her detriment based on respondent's representations.

In *Fuller v. Fuller*, D.C.App., 247 A.2d 767 (1968), the husband sought a divorce from the wife, who asked for support for an illegitimate child born during their marriage. Husband knew that wife was four months pregnant with the child of another man at the time they were married. The wife claimed that husband had agreed to accept the child as his own and to provide support. The court held that in the absence of an adoption, the duty of a father to support an illegitimate child ceases upon termination of the marriage. The court held that there was no evidence of an agreement to support the child other than during the marriage. The court further held that there was no equitable estoppel, since there had been no representation of fact made, upon which appellee relied, inducing her to alter her position to her prejudice. Specifically, the natural father of her child could still be sued for support.

In *Sargeant v. Sargeant*, 88 Nev. 223, 495 P.2d 618 (1962), the court held that a foster father, upon the termination of his marriage, had no obligation to support a foster child. Appellee claimed that appellant stood in *loco parentis* to the child and thus owed a duty of support. The court held that a foster parent may abandon the position of *loco parentis* at any time. Finding no contract, and no grounds for estoppel, the court held that the foster parent had no continuing duty to support the child.

In *Clevenger v. Clevenger*, 189 Cal. App.2d 658, 11 Cal.Rptr. 707 (1961), wife sued for divorce and husband counterclaimed that the child was not his. The wife's counsel admitted that husband was not the natural father and that the wife became pregnant while husband was away in the service. The husband agreed there were to be no questions about the child. The court held that the duty of a stepparent to support a stepchild continues only as long as that relationship continues. Thus a divorce terminates the relationship. The court stated that a duty to support based on a contract would be valid, but that no contract existed there. There was no estoppel, since the appellee had not suffered a loss upon relying on a statement or act by appellant.

In the case at bar, there are none of the elements normally associated with an estoppel or implied contract. The petitioner became pregnant before any promise of marriage was made; apparently both parties believed the child to be respondent's; the marriage was one of form only, since neither party lived together at any time; the respondent never paid any support; he had no relationship with the child at all and never assumed his role as a father; the mother never relied on the marriage to her detriment; she never sought support until 13 years after the child's birth.

Although the divorce decree entered one year later represents that the child was that of the respondent, and the birth certificate bears his last name, those facts alone are not sufficient to work an estoppel.

4. *Conclusion.* I hold that, unless the blood retest reaches a conclusion contradictory to the present report, which excludes the respondent as the father, the rebuttable presumption of legitimacy has been conclusively overcome by the blood grouping test.