Edward J. Potjlos, J.
This is a paternity proceeding commenced by the petitioner to have the court declare the respondent to be the father of a female child, H., born to her on October 1, 1962. The respondent is presently the husband of the "petitioner and admits that he is H.’s father, a set of circumstances that ordinarily would present no problem to the court.
However, at the time H. was born, the petitioner was married to Reuben Z., the intervenor.
The following facts are undisputed: (a) The petitioner and intervenor were married on March 13, 1954; (b) that during the aforesaid marriage and while the parties were living together, three children were born — one on July 15, 1955, one on January 19, 1959 and the child involved in this case, on October 1, 1962; (c) the parties lived together until 1965;
(d) the parties were divorced in Florida on June 10, 1969 and the divorce decree referred to the three children of the parties; (d) this child, as well as the other children, was given the surname of Z., and the three children were at all times regarded as the lawful children of said parties, at least up •to the date of the divorce, and for several years thereafter;
(e) the petitioner instituted proceedings in the Family Court of Queens County on August 19, 1966, in which she stated under oath that Reuben Z. was the father of the three children, including H.; (f) she instituted another proceeding in March of 1968 in the same court in which she repeated this statement again under oath. Furthermore, at a hearing in the Family Court of Queens County under Docket tío. F-2125 of 1966, the records show that the Judge presiding made the following statement: “this is a proceeding for the support of the wife and three children of the parties. The marriage and the paternity of the children are not in question. The parties are living apart since the Respondent left the marital home in December 1965.”
The petitioner, in an affidavit submitted to this court, made the following explanatory statement with reference to the court proceedings in which the paternity of this child had *574 been affirmed by her under oath: 1 ‘ I admit that I lied about H.’s paternity in the .three court proceedings just mentioned, but, your Honor, what else could I do? I had three children, I was married to a man who wouldn’t support me, I didn’t know if Ben would marry me and I knew that if I confessed the truth without being married to Ben, there would be a huge scandal and disgrace and H. would be considered a bastard child. My parents are Orthodox Jews and that would have made a scandal even worse. I was just happy to have Ben because I don’t know what I would have done without him.”
After a lapse of approximately nine years from the birth of this child, the petitioner now seeks to establish that her youngest child is not a child of her marriage, but that of the respondent, her present husband.
The matter originated in this court in June, 1971, and counsel for the petitioner notified one Reuben Z., herein named as the intervenor, of the fact that such a proceeding was to be commenced. Said intervenor was then and still is a resident of the State of Florida.
On the original return date an attorney appeared who, while not filing a notice of appearance, did state he had been contacted by the intervenor and would be representing him for the purpose of opposing this petition and that he would consent to have the intervenor submit to a blood grouping test. At that time, a Law Guardian was appointed to protect the interests of the child.
Subsequently, the court was informed by a letter from the intervenor that the attorney who had appeared on his behalf had retired to Florida and was no longer representing him.
The matter was next before the court in November, 1971, at which time the results of the blood grouping tests of the petitioner, the respondent and the child were available, but not that of the intervenor. Those tests results that were available were inclusory.
A motion, in effect for summary judgment, was made by the Law Guardian and was granted by the Judge then sitting on the grounds that the uncontradicted facts were not sufficient .to overcome the presumption of legitimacy. Particularly since the testimony of the petitioner under oath would not be highly regarded in view of her own statement in an affidavit that she had lied under oath.
Subsequently, and oddly, the results of a blood grouping test of the intervenor were made available to the attorney *575 for the petitioner and the results were exclusory. Armed with this new evidence, a motion was made to reargue the motion for summary judgment which was granted and on reargument the order dismissing the petition was vacated and a hearing was held.
The testimony and evidence hore out the factual situations as alleged in the affidavits submitted on the previous motions, with the one addition of the results of the intervenor’s blood grouping test, the scientific accuracy of which was not disputed.
There is presented, therefore, a clear conflict. On the one hand is the well-established presumption of legitimacy buttressed by the very circumstances which have been traditionally used to rebut the presumption; namely, the credibility of the wife and access by the husband. Not only did the intervenor husband have access to the wife, he lived with her during the period of conception of this child and far beyond. She also testified she had sexual intercourse with him as well as the respondent during this period.
On the other hand is but one fact — a blood grouping test .that, accepting the scientific accuracy thereof, shows the intervenor could not be the father of the child.
Perhaps the most widely cited case in these matters is Matter of Findley (253 N. Y. 1), which is most often cited in support of the application of the presumption, but which actually held it rebutted by the facts in that case, decided in 1930.
The eminent Judge Cardozo, speaking for the court, reviewed the application of the presumption of legitimacy starting with the “ rule of the four seas ” in the seventeenth century, which he observed was “ exploded ” because of its “absolute nonsense” as early as 1732, and (p. 7) “ since then the presumption of legitimacy, like other presumptions, such as those of regularity and innocence, has been subject to be rebutted, though there have been varying statements of the cogency of the evidence sufficient to repel it.”
He then reviews the various phrases used by the courts to describe the quantum of evidence necessary to overcome the presumption and concludes (p. 8) “what is meant by these pronouncements, however differently phrased, is this and nothing more, that the presumption will not fail unless common sense and reason are outraged by a holding that it abides. If husband and wife are living together in the conjugal relation, legitimacy will be presumed, though the wife has harbored an adulterer * * * It may even be presumed though *576 the spouses are living apart if there is a fair basis for the belief that at times they may have come together. Whether such a basis exists in any given instance is to be determined, however, in the light of experience and reason. The presumption does not consecrate as truth the extravagantly improbable, which may be one, for ends juridical, with the indubitable false.”
It is clear from the foregoing that the principal, if not the sole, determining factor in the application of the presumption, at that time, was access by the husband to the wife. This was the point upon which a number of subsequent cases turned, Matter of Mannain v. Lay (33 A D 2d 1024, affd. 27 N Y 2d 690); Commissioner of Public Welfare v. Koehler (284 N. Y. 260); Commissioner of Public Welfare v. Rose (283 App. Div. 781); and Matter of Black v. Brown (27 A D 2d 683), among others.
However, while the logic and reasoning of Judge Cardozo has not been affected by the passage of the years since 1930, science has. In 1935 .the Legislature first recognized the value of blood grouping tests and enacted a statute allowing an exclusionary result in evidence in a paternity case. Such evidence has been given increasingly greater credence ovey the years to the point where in Anonymous v. Anonymous (1 A D 2d 312), Judge Beldock, speaking for the Second Department said (p. 316): “ The .tests of course will be relevant only if they show noncompatability # * * If so, such evidence should be deemed conclusive as to nonpaternity.” (Emphasis added.)
It is apparent, therefore, that the presumption of legitimacy, while losing none of its cogency and still serving its laudable purposes, is nonetheless just another legal presumption, an inference to be used in the absence of1 conclusive evidence to the contrary, access in the days of Judge Cardozo, blood tests today, and who knows what tomorrow may bring.
A trial has often been described as a search for the truth. The tools available to us in this search have changed, but never the objective, and we must not lose sight of the forest for the trees. We must also avoid the temptation to conclude that things are the way we would like them to be as opposed to what they are in fact. The presumption of legitimacy was never intended to suppress the truth and perpetuate a falsehood, which, I conclude, would be the result if it were allowed to control the decision in this case.
Therefore, I hold that the presumption has been rebutted by the evidence and since the intervenor could not be the *577 father of the child herein, the testimony of the petitioner and the admission of the respondent are sufficient to establish paternity in the respondent.
The petition is granted. The respondent, Ben B. is declared to be the natural father of the child who shall henceforth be known by the name H. L. B. and that all public and other records be corrected and amended to so state.