MATTHEW KING et al., Plaintiffs, v AMALIA TANNER et al., Defendants.

Supreme Court, Westchester County, February 14, 1989

APPEARANCES OF COUNSEL

*Ball & Ferrari* for plaintiffs. *Muldoon & Horgan* for defendants.

**OPINION OF THE COURT**

GERARD E. DELANEY, J.

In a case of first impression, this court holds that the results of a DNA (deoxyribonucleic acid) test which indicate a probability of paternity of 99.993% are sufficient as a matter of law to warrant a summary judgment dismissing a cause of action by plaintiff for *slander* wherein the purported slander is alleged to be a statement by the defendant mother of a child,

that plaintiff "is the father" of defendant's child and plaintiff fails to submit sufficient evidence in law to require a trial of a material issue of fact. The court further holds that such DNA test results are in and of themselves sufficient to rebut the presumption of legitimacy in these circumstances and that common-law standards of proof are proper in the slander action.

The following facts are not in dispute:

Plaintiff, Matthew King, is married to coplaintiff, Roslyn King.

At all relevant times, defendant, Amalia Tanner, was married to Hoyt Tanner (a nonparty) and she conceived and bore a child, "Jane Doe" (the name of the child being fictitious for purposes of this decision), whom she claims is the natural and biological child of Matthew King as a result of their prior sexual relationship and that during their relationship she "did not engage in sexual relations with anyone else other than Matthew King".

Plaintiff Matthew King and his wife commenced this action against defendant, Tanner, on or about June 9, 1988 alleging, *inter alia,* a cause of action for slander in that "on or about May 20, 1988, the defendant, in the presence of Geraldine Civitano, maliciously spoke and published of and concerning the plaintiffs the following false and defamatory words, to wit: 'Matthew King is the father of "(Jane Doe)" '. Such words were wholly false. Thereby the plaintiff was injured in his reputation in the sum of One Million and 00/00 ($1,000,000.00) Dollars".

Defendant Tanner answered, *inter alia,* as a second affirmative defense that: "Plaintiff's first cause of action fails to state a cause of action as truth is the absolute defense to a claim of defamation".

Defendant Tanner served a "Notice to Submit to Blood Examination" *(see,* CPLR 3121 [a]) on Matthew King on or about July 8, 1988, requiring him to "submit to a blood examination to include blood type and human leucocyte antigen tests at the offices of Eve Rosemarin, M.D.". However, the parties later agreed that defendant Tanner and "Jane Doe" were "to have their blood samples drawn by a doctor * * * and forwarded to Lifecodes, Inc. to be examined for blood type and human leucocyte antigen tests * * * [inasmuch as] Matthew King had blood samples drawn at the Parental Testing Lab at New York University * * * on July 6th * * * Mr. King

was directed to Parental Testing Lab by Lifecodes, Inc. and Lifecodes, Inc. has possession of the vials of Mr. King's blood for the appropriate testing."

Lifecodes, Inc., received the blood samples of Matthew King, Amalia Tanner and "Jane Doe", conducted their "DNA-Print Identification Test" on such samples and concluded, *inter alia,* that: "The alleged father, Matthew King, is not excluded as the biological father of the child [Jane Doe]. Based on the * * * genetic testing results obtained by RFLP analysis [DNA Probes], *the probability of paternity is 99.993%* as compared to an untested, random man of the North American population. (Prior probability = 0.5) * * * *Probability of paternity 99.993%. Combined Paternity Index 15103.18"* (emphasis added).

Based upon the affidavits, exhibits and law submitted, defendant moved, *inter alia,* for summary judgment dismissing the first cause of action for slander, alleging "there is no material issue of fact sufficiently denying the truth of the statement: 'Matthew King is the father of [Jane Doe]' ".

In opposition to the motion, *only* an affidavit by Mr. Ferrari, plaintiff's counsel, is submitted by which, in substance, only the following is submitted:

1. "Plaintiff reserves his right to a further blood test of defendant and her daughter";

2. "Defendant, Tanner, was married to Hoyt Tanner at the time she became pregnant and, therefore, he and 'other males' * * * should not be ruled out as [Jane Doe's] father";

3. "All the blood tests were unsupervised";

4. " 'DNA testing' is not recognized by the Courts of the State of New York and as such is *not conclusive, admissable evidence";*

5. "Plaintiff 'has refused to admit the DNA in the Family Court matter' ". (There is apparently a Westchester County Family Court paternity proceeding filed by defendant Tanner, under docket No. P-1419/88, although this court has no copies of any papers filed therein.)

### A. ALLEGATION OF SLANDER AND THE BURDEN OF PROOF—COMMON-LAW STANDARD APPLIES

Defendant Tanner (a married woman at the time of conception) has allegedly stated in the presence of at least one other nonparty that plaintiff (a married man) "is the father of"

"Jane Doe", a child given birth to by defendant Tanner: "Matthew King is the father of [Jane Doe]".

In order "[t]o create liability for defamation there must be * * * a *false* and defamatory statement". (Restatement [Second] of Torts § 558, at 155 [1977] [emphasis added].) In general, "libel" embraces any "form of communication that has the potentially harmful qualities characteristic of written or printed words." (Restatement [Second] of Torts § 568 [1].)

A libel (or slander) per se is "a libel in which the fact of the defamation is clear from the publication itself". *(Hogan v Herald Co.,* 84 AD2d 470, 480 [4th Dept 1982], *affd* 58 NY2d 630; *Blumenstein v Chase,* 100 AD2d 243, 246 [2d Dept 1984]; *see, Matherson v Marchello,* 100 AD2d 233, 236 [2d Dept 1984].)

However, unless the extrinsic fact is known that these parties were married to others at the time of conception, such an alleged statement is not slander per se but, rather, slander per quod inasmuch as the defamatory meaning is not apparent on its face. *(Aronson v Wiersma,* 65 NY2d 592, 594-595; see discussion of libel per se and per quod in *Matherson v Marchello, supra,* at 236, 237, n 3.) There is, of course, the extrinsic implied adultery as well *(cf., Meyers v Somlo,* 105 AD2d 1007 [3d Dept 1984]). The primary procedural distinction between per se and per quod is that special damages (special harm) need *not* be alleged in the former, however, is necessary in the latter. *(See, Matherson v Marchello, supra; Noble v Creative Tech. Servs.,* 126 AD2d 611, 612-613 [2d Dept 1987]; *cf., Casamassima v Oechsle,* 125 AD2d 855, 856 [3d Dept 1986].)

An argument might be made that the statement alleged to have been uttered by defendant Tanner is slander per se for the false allegation of fathering a child out of wedlock is one in which plaintiff's trade, business or profession might tend to be injured as well as his social reputation for chaste behavior. However, this court deems such issue not raised and considers this case to concern slander per quod. *(Cf., Matherson v Marchello, supra,* at 240; *compare,* Civil Rights Law § 77, *and Matter of Lisa M. UU. v Mario D. VV.,* 78 AD2d 711 [3d Dept 1980], *with Matter of Carter v Carter,* 58 AD2d 438, 445 [2d Dept 1977].) (This court notes that the previous case of *Terwilliger v Wands,* 17 NY 54, which held a *man* cannot be injured in his reputation by unchaste behavior is doubtful, on similar facts, to survive an equal protection argument.)

Defendant Tanner, however, by way of her "Second Affirmative Defense" has pleaded "truth" as an "absolute defense" to such slander charge. It is correct that at common law "truth" is a defense to be pleaded by defendant and proved by him by a fair preponderance of the credible evidence. At common law, once the plaintiff had established the defamatory nature of the publication, a presumption of falsity attaches *(cf.,* Prosser, Torts § 116, at 798 [4th ed 1971]; Restatement [Second] of Torts § 581A, comment b [1977]) and the defendant carried the burden of proving in defense that the statement was true. *(See,* Sack, Libel, Slander, and Related Problems § III.3.1 [PLI 1980]; *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 379-380; *Bingham v Gaynor,* 203 NY 27.) Following a series of United States Supreme Court cases it is now clear that when an action is by a *private* figure and the purported libel is published on matters of public concern by a media defendant that plaintiff has the burden of showing both falsity and fault before recovering damages *(Philadelphia Newspapers v Hepps,* 475 US 767, 776; *accord, Mahoney v Adirondack Publ. Co.,* 71 NY2d 31, 37; *similarly, Gertz v Robert Welch, Inc.,* 418 US 323, 347-348; *cf., Chapadeau v Utica Observer Dispatch,* 38 NY2d 196); if the plaintiff is a public official or figure and the speech is of public concern, then a plaintiff has the burden of showing "actual malice" in the making of the statement *(New York Times Co. v Sullivan,* 376 US 254, 279-280).

In this case we deal with a *private* defendant and plaintiff on matters *not* of public concern. The question of the burden of proof specifically left open by *Philadelphia Newspapers (supra,* at 779, n 4) was "the quantity of proof of falsity that a private-figure plaintiff must present to recover damages" and "what standards would apply if the [private] plaintiff sues a nonmedia defendant". The New York Court of Appeals similarly did not reach such issue in *Steinhilber v Alphonse* (68 NY2d 283, 289, n 1) inasmuch as the parties had assumed the applicability of *Gertz (supra).*

The Supreme Court cases on matters of public concern involving either public or private figures and media defendants had been forged out of the United States constitutional guarantees of the First Amendment protections for speech and press. *(New York Times Co. v Sullivan,* 376 US, at 256, *supra; cf., Gertz v Robert Welch, Inc., supra,* at 341, 348-350.)

However, in 1985 the Supreme Court decided *Dun & Bradstreet v Greenmoss Bldrs.* (472 US 749). This case involved not only a private figure plaintiff but also speech of purely private

concern. "A plurality of the Court in *Dun & Bradstreet* was convinced that, in a case with such a configuration of speech and plaintiff, the showing of *actual malice* needed to recover punitive damages under either *New York Times* or *Gertz* was unnecessary". *(Philadelphia Newspapers v Hepps, supra,* at 774 [emphasis added]; *see, Contemporary Mission v New York Times Co.,* 842 F2d 612, 617 [2d Cir 1988].) " 'In light of the reduced constitutional value of speech involving no matters of public concern, we hold that the state interest [in preserving private reputation] adequately supports awards of presumed and punitive damages—even absent a showing of "actual malice." ' *[Dun & Bradstreet, supra],* at 761 (opinion of Powell, J.). * * * See also *id.,* at 764 (Burger, C.J. * * *; *id.,* at 774 (White, J. * * *)." *(Philadelphia Newspapers v Hepps, supra,* at 774-775.) "When the speech is of exclusively private concern and the plaintiff is a private figure * * * the constitutional requirements do not necessarily force any change in at least some of the features of the common-law landscape." *(Supra,* at 775.)

While a persuasive argument might be made that the speech of a private defendant on a matter of nonpublic concern should be no more infringed upon under First Amendment principles than that of media defendants, i.e., the First Amendment guarantee both of freedom of speech *and* the press so as to justify imposition of the actual malice standard, it appears that the result of *Dun & Bradstreet (supra)* has been to clearly leave the States with the authority to "revive" (although they apparently never went away) the pre-*New York Times Co. v Sullivan* common-law standards for libel wherein, as indicated above, after the showing of the defamation by plaintiff, the falsity is presumed and the defendant, here Mrs. Tanner, then has the burden of proving the "truth" of such statement. The issue is still not decisively settled in New York *(see, Steinhilber v Alphonse,* 68 NY2d 283, at 289, n 1, *supra; Philadelphia Newspapers v Hepps, supra,* at 779, n 4).

Accordingly, the court finds that plaintiff bears only the burden *(Dano v Royal Globe Ins. Co.,* 59 NY2d 827, 829) of showing "common-law malice", that is, that defendant was "at fault" in publishing the defamatory falsehood. *(Gertz v Robert Welch, Inc.,* 418 US 323, *supra.)* Common-law "malice", as is alleged by plaintiff King, is a concept of "ill will or spite" *(Pollnow v Poughkeepsie Newspapers,* 107 AD2d 10, 14, n 2 [2d Dept 1985], *affd* 67 NY2d 778) "or culpable recklessness or negligence". *(Stukuls v State of New York,* 42 NY2d 272.)

Compare the "constitutional malice" of *Rinaldi v Holt, Rinehart & Winston* (42 NY2d 369, *supra);* defendant Tanner then has the burden of proof by a fair preponderance of the credible evidence of the "truth" of the alleged slanderous statement.

### B. LEGAL STATUS OF THE DNA TESTING IN NEW YORK

DNA "fingerprinting" is at the " 'cutting edge' of forensic science" and "has its basis in the fact that each individual has an entirely unique genetic 'signature', devised in turn from the fact that the over-all configuration of the DNA, found in every cell of the human body * * * containing a nucleus * * * is different in every individual except in the case of identical twins. *This fact is not only generally accepted by the scientific community to which it is related but is uniformly accepted therein". (People v Wesley,* 140 Misc 2d 306, 307-308, 332 [emphasis added]; *cf., Matter of Baby Girl S.,* 140 Misc 2d 299, 303-304; *People v Crosby,* 116 AD2d 731, 732 [2d Dept 1986] [electrophoresis—a stage of DNA "fingerprinting"]; *see, People v Wesley, supra,* at 315.)

The "DNA probe is a blood genetic marker test" *(Matter of Baby Girl S., supra,* at 304) and the results of any such test are clearly admissible in a paternity action (Family Ct Act § 532 [a]; *compare, Matter of Debbie L. K. v Wayne Y.,* 96 AD2d 888 [human leucocyte antigen (H.L.A.) test admissions]).

The accuracy of blood genetic marker testing has progressed from what was originally its admission into evidence only as to *exclusion* of paternity to the recognition that "utilization of the HLA *and associated sophisticated tests can increase the probability of exclusion to such a high degree as to affirmatively prove paternity* where a putative father is not excluded by the test results." *(Matter of Department of Social Servs. v Thomas J. S.,* 100 AD2d 119, 123 [2d Dept 1984], *appeal dismissed* 63 NY2d 675 [emphasis added]; *cf., Sylvia B. v Ben.,* 70 Misc 2d 572 ["who knows what tomorrow may bring"—(in terms of testing)]; Schatkin, Disputed Paternity Proceedings, at 8-36—8-37 [4th rev ed 1985 (1987 Supp)]; see this court's discussion at part C [2], *infra.)*

Under CPLR 3121 (a), defendant properly served plaintiff, Mr. King, with a notice of a physical examination to take blood samples, inasmuch as the plaintiff's first cause of action for slander placed the blood relationship of Mr. King in direct controversy especially inasmuch as defendant has "defended", *inter alia,* on grounds of "truth".

The DNA probe test is admissible in this action inasmuch as "the test [for admissibility] is not whether a particular procedure is unanimously indorsed by the scientific community, but whether it is generally acceptable as reliable." *(People v Middleton,* 54 NY2d 42, 49.) This court specifically finds the test results of the DNA probe taken by Mr. King and defendant Tanner to be reliable and admissible by defendant on the instant application for summary judgment as to the issue of the legal viability of the alleged slander and the "truth" of such statement.

## C. THE MOTION FOR SUMMARY JUDGMENT

### (1) THE STANDARD:

The test to be applied on a motion for summary judgment is that the "one opposing a motion for summary judgment must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim or must demonstrate acceptable excuse for his failure to meet the requirement of tender in admissible form; mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient". *(Zuckerman v City of New York,* 49 NY2d 557, 562; *see, Winegrad v New York Univ. Med. Center,* 64 NY2d 851, 853.)

In opposing a motion for summary judgment such party may *not* rely solely upon the affirmation of his attorney, who is without personal knowledge of such facts. An opposition in such a form will *not* supply the showing necessary to successfully resist such a motion. *(Roche v Hearst Corp.,* 53 NY2d 767, 769; *Rotuba Extruders v Ceppos,* 46 NY2d 223, 229, n 4.)

While Mr. King may be said to have a limited privilege as a respondent in a Family Court proceeding (Family Ct Act § 531) to avoid giving evidence, no such privilege exists in this Supreme Court action wherein he affirmatively alleges a slander by which he claims he was falsely accused of being the father of defendant Tanner's child.

### (2) THE PRESUMPTION OF LEGITIMACY:

Moreover, Mr. King cannot, in the face of the DNA evidence tendered, rely solely upon the "presumption of legitimacy" of such birth it being that defendant Tanner was married to another at the time of conception. The case most frequently cited in support of such a "presumption" actually held such "presumption" rebutted under its fact pattern. In substance, Chief Judge Cardozo stated: "What is meant * * * is this and

nothing more, that the presumption will not fail unless common sense and reason are outraged by a holding that it abides. * * * The presumption does not consecrate as truth the extravagantly improbable, which may be one * * * with the indubitably false". *(Matter of Findlay,* 253 NY 1, 8.)

The main, if not the sole factor at the time of *Findlay (supra)* was *access* by the husband to the wife *(Sylvia B. v Ben., supra,* at 576). Citing the then recent scientific advances of blood-grouping *exclusion,* the court in *Sylvia B.* went on to state (at 576): "We must also avoid the temptation to conclude that things are the way we would like them to be as opposed to what they are in fact. The presumption of legitimacy was never intended to suppress the truth and perpetuate a falsehood". The "presumption * * * arose in an era when true parentage could not be scientifically ascertained" *(Matter of Constance G. v Herbert L.,* 119 AD2d 209, 211 [2d Dept 1986], *lv dismissed* 70 NY2d 667). Such a "presumption" is *not* conclusive and may be rebutted. *(Matter of Fay,* 44 NY2d 137, *appeal dismissed sub nom. Buck v Hunter,* 439 US 1059, *reh denied* 440 US 968; *see, Matter of Baby Girl S.,* 140 Misc 2d 299, 302, *supra,* and cases cited therein.)

Blood testing may itself overcome such "presumption". *(See, Matter of Department of Social Servs. v Thomas J. S.,* 100 AD2d 119; *Matter of Baby Girl S., supra,* at 303, and cases cited therein.)* Defendant does *not* have to rebut sexual *access* by her husband; what she need do and *has* done for purposes of this motion is to rebut the presumption of legitimacy by the introduction of the DNA probe test results and her affidavit. *(Cf., Matter of Constance G. v Herbert L., supra,* at 212.)* The legal fictions of the early law cannot abide when faced with the scientific advances of today and tomorrow. Oral denial or fabrication cannot stand in light of reliable scientific evidence showing high probability of paternity. *(Cf., Barber v Davis,* 120 AD2d 364 [1st Dept 1986], *revg sub nom. Matter of Angela B. v Glen D.,* 126 Misc 2d 646.)* While H.L.A. testing has been said not to be conclusive *(Matter of Denise H. v John C.,* 135 AD2d 816 [2d Dept 1987]),* reliable DNA testing, by its nature, for purposes of establishing paternity "by clear and convincing evidence" *(Matter of Jane PP. v Paul QQ.,* 65 NY2d 994, 996),* cannot only "elevate the evidence to meet the requisite standard of proof" (65 NY2d, at 996 [H.L.A.]) but, in the opinion of this court, once the DNA probabilities are in the 99+ % range, such is "conclusive" based on the "clear and convincing" standard of proof required. Nowhere is there a

requirement that blood testing be 100% accurate *(Matter of Department of Social Servs. v Thomas J. S., supra,* at 121-124). Neither the parties *nor the courts* need be blind to scientific reality.

Mr. King has, in opposition to this motion, submitted only an affirmation by his attorney, Mr. Ferrari, which while it raised some of the issues above, is insufficient as a matter of law to oppose defendant Tanner's motion for summary judgment dismissing the first cause of action for slander; for viewed by *whatever* standard, whether it be plaintiff's to prove the falsity of the slander, or defendant's to prove the truth of the statement, plaintiff has failed and defendant has succeeded.

The court having found that the admission of the DNA probe test results is proper on such a motion and plaintiffs having failed as a matter of law to sufficiently raise any material question of fact on the issue of the falsity (or truth) of the alleged slander, motion by defendant Tanner to dismiss the first cause of action for slander is granted with prejudice and the remaining matters severed for purposes of trial. *(Cf., Klein v Prial,* 32 AD2d 925, *affd* 28 NY2d 506.)

The court also notes in passing that plaintiff Matthew King's allegation that he was damaged by the slander in the "round figure amount of $1,000,000 * * * is an insufficient allegation of special damages" in this case of slander per quod. *(Talbot v Johnson Newspaper Corp.,* 124 AD2d 284, 286 [3d Dept 1986]; *cf., Garland v Vermilyea,* 88 AD2d 1044, 1045.)