OPINION OF THE COURT
Gerard E. Delaney, J.
This is an application by plaintiffs (and defendant Matthew King Agency, Inc.), inter alia, to reargue and renew a previous *1074 decision of this court entered on February 17, 1989 (King v Tanner, 142 Misc 2d 1004) which found that "the results of a DNA (deoxyribonucleic acid) test which indicate a probability of paternity of 99.993% are sufficient as a matter of law to warrant a summary judgment dismissing a cause of action by plaintiff for slander wherein the purported slander is alleged to be a statement by the defendant mother of a child, that plaintiff 'is the father’ of defendant’s child and plaintiff fails to submit sufficient evidence in law to require a trial of a material issue of fact. The court further [held] that such DNA test results are in and of themselves sufficient to rebut the presumption of legitimacy in these circumstances and that common-law standards of proof are proper in the slander action” (supra, at 1004-1005).
In opposition to Amalia Tanner’s previous motion for summary judgment dismissing the cause of action for slander wherein the affidavit and the results of the DNA test were submitted for the "truth” of such statement, plaintiffs submitted no personal affidavits or medical experts and relied solely upon the affidavit of their then counsel, Mr. Ferrari, wherein counsel indicated, in substance, that: "1. Plaintiff reserves his right to a further blood test of defendant and her daughter; 2. (Defendant mother was married to Hoyt Tanner at the time of conception and he and other males should not be ruled out); 3. All the blood tests were unsupervised; 4. DNA testing is not recognized by the Courts of the State of New York and as such is not conclusive, admissible evidence; 5. Plaintiff has refused to admit the DNA in the Family Court matter.” This court viewed the sole submission of an attorney’s affidavit in support insufficient as a matter of law to oppose defendant Tanner’s motion for summary judgment.
In rendering its ultimate determination this court found not only was the DNA test result admissible in this action but that DNA "fingerprinting” was "not only generally accepted by the scientific community to which it is related, but is uniformly accepted therein”. (People v Wesley, 140 Misc 2d 306, 307-308, 332.) This court briefly traced the recognition and use by the courts of blood genetic marker tests as having advanced beyond their initial use for "exclusion” only to the stage that "utilization of the HLA and associated sophisticated tests can increase the probability of exclusion to such a high degree as to affirmatively prove paternity where a putative father is not excluded by the test results” (Department of Social Servs. v Thomas J. S., 100 AD2d 119, 123 [2d Dept *1075 1984], appeal dismissed 63 NY2d 675 [emphasis added]), and such tests may overcome the "presumption of legitimacy” (supra; accord, Matter of Baby Girl S., 140 Misc 2d 299, 302, and cases cited therein). Mrs. Tanner did not have to rebut sexual access by her husband, she had to rebut the presumption of legitimacy which she did by the test and her affidavit. Indeed, the concept of "sexual access” in light of the scientific testing available in paternity issues today is, in the opinion of this court, an outdated legal fiction when the legal search is for truth and justice to those involved. (See, King v Tanner, supra, at 1012.)
Finally, this court recognized that the standard of proof in establishing paternity was "by clear and convincing evidence” (Matter of Jane PP. v Paul QQ., 65 NY2d 994, 996) and that "once the DNA probabilities are in the 99+ % range, such is 'conclusive’ * * * [n]owhere is there a requirement that blood testing be 100% accurate * * * [n]either the parties nor the courts need be blind to scientific reality.” (King v Tanner, supra, at 1012-1013.) While the "clear and convincing” standard of proof is above the normal proof by a "preponderance of the credible evidence” standard in civil cases, such standard is not as high as "beyond a reasonable doubt” on said issue, although the DNA testing might be seen as extremely probative even if the latter were the standard. One may wish to argue legal fiction on whatever slim excuse but it is difficult to avoid the conclusive effect of the DNA testing as a scientific "photograph” or "fingerprint” of the act of biological conception of the parties’ child.
On their new motion(s), plaintiffs have belatedly decided to now offer their individual affidavits and the affidavit of Dr. Leon Sussman, a recognized expert in paternity testing. Dr. Sussman’s affidavit in substance states that DNA testing without corroboration by "more generally accepted tests” (e.g., HLA) does not provide "sufficient” or "positive” proof of paternity; "Before these results can be accepted, there must be some further form of scientific corroboration”. Dr. Sussman continued on to cite conjectural questions concerning the propriety of the specific testing done. It is noted by the court on this issue that it was on the specific agreement of the parties that the testing was done at the places and manner described. (See, King v Tanner, supra, at 1005.)
All such affidavits and medical opinions were or could have been available to plaintiffs at the time of the making of defendant Tanner’s original motion for summary judgment. *1076 The parties, however, elected to approach the application only by an affidavit from their counsel. Their now proffered excuse that this was "law office failure” on the part of their prior attorney does not ring true in light of what this court deems to have been a strategic and/or tactical move by them on the prior application. Their proffered "excuse” for not submitting sufficient opposition and "additional facts” to such motion is not valid for purposes of the motion to renew. It is not "new” evidence. The only "new” evidence is the results of the HLA tests below.
As to Dr. Sussman’s affidavit, the court again states that it never said that the DNA testing on this case was "positive” proof of plaintiff Matthew King’s paternity, only that under the applicable standard of proof in such cases the DNA test was "conclusive” for their issue raised.
Indeed, while this motion was sub judice, the results of the multiple blood tests (including HLA) submitted to by the parties, the child and Hoyt Tanner on May 1, 1989 were made known to the parties and this court by a report from the Roche Biomedical Laboratories dated May 30, 1989.
Such additional non-DNA blood paternity testing included ABO, RH, MNSs, Kell, Duffy and HLA testing. Hoyt Tanner, defendant’s husband, was specifically excluded as being the biological father of "Jane Doe”. Matthew King, as a result of such additional combined blood/HLA testing, is said to have a probability of paternity of 99.98%. As indicated above, the DNA probe testing of the parties showed Matthew King with a probability of paternity of 99.993%. This court has considered the affidavits of the parties, Dr. Sussman and the newly received HLA/combined testing on this motion to reargue/ renew and it sees no reason to depart from its original decision. Indeed, the results of the additional testing only serves, in this court’s mind, to vindicate the extreme reliability of DNA testing and its utilization in paternity cases in general and in this specific case.
This court is, of course, in full agreement with plaintiff that before a finding of paternity be made that the degree of proof must be by clear and convincing evidence and that there be a genuine belief that the putative father, Mr. King, is indeed the parent of "Jane Doe”. It is also recognized that the courts have not held HLA testing to be "conclusive”. What this court has previously held, however, is that in these circumstances and given the high degree of reliability of DNA probe testing, *1077 DNA testing can be conclusive for the standard of proof needed, i.e., clear and convincing, when the results are in the 99+% range.
The acceptance of DNA testing by this court on such a standard merely recognizes not only the reliability and extreme accuracy of such a scientific advance beyond the already high regard for the standard HLA testing but also recognizes that the function of a court in paternity matters may well and should be different in light of such advances. Having accepted the theory and extreme accuracy of DNA testing in paternity matters, the only real attack which might be made by a defendant/respondent in such a proceeding would be on the individual reliability of the specific testing procedure in each case — problematical rear-guard action which in most cases would seem to be one of factual delay on a respondent’s behalf.
Counsel for plaintiff herein expresses indignation throughout his argument that, e.g., "if these test results were found to be conclusive and dispositive of all other issues pertaining to paternity, the very role played by this Court would be usurped. No longer would the court be an actual trier of fact as it would be a lab technician which [sic] conducted the test which would be the ultimate arbitrator of paternity”.
Nonsense! Had plaintiff been excluded as biological father by mere ABO blood analysis it is doubtful he would seek to righteously uphold the prerogative of the courts! Having reached the level of scientific advance now available through the utilization of DNA probe testing in paternity testing, neither the courts nor the parties need continue to operate on nineteenth century standards. Yes, it should be the court which shall give the final imprimatur to the paternity decision as a matter of law. Yes, the necessary indicia of reliability of the individual testing would be subject to examination and attack if necessary. However, previous factors utilized by the courts involving either hearsay or the subjective testimony of the parties seem to this court to be scientifically irrelevant. Other than perhaps a criminal case, can there be any doubt but that issues of paternity are fraught with the potential for perjury. In this court’s opinion, the scientific advances of today have made the following general areas essentially irrelevant for determining paternity: sexual access by a married or unmarried male; credibility of the parties; the mother’s marriage status and her sexual promiscuity or lack thereof; credibility of nonexpert witnesses presented by the parties; admis *1078 sion or statements made by either the male or female as to who is the father of the child.
Once the DNA probe results reach into the 99+% range, it is difficult to believe a court would for any reason disregard the testing, if same has been determined to have been reliable and base its decision on, e.g., "credibility of the witnesses”. (See, e.g., Barber v Davis, 120 AD2d 364 [1st Dept 1986], revg sub nom. Matter of Angela B. v Glen D., 126 Misc 2d 646.) Few such areas of the law are capable now of scientific legal resolution and it is folly to suggest that a testing in itself so reliable is "but one of the factors” a court must weigh in its determination. In this court’s opinion, all paternity issues should be the subject of mandatory testing for DNA and whatever other tests are deemed reliable at the time and generally accepted by the scientific community. Perhaps then the courts, and especially Family Court, having considered the reliability of the test at issue may go on forthwith to the more important determination considering the best interests of the child and the parties’ respective responsibilities therefor once the paternity is established. The accurate DNA probe testing ensures both swift justice to all of the parties involved and serves to mitigate the legal uncertainty of this area of the law since the first question of fatherhood was raised by either party in days of yore. That the parties were married to others at the time of the conception of the child, "Jane Doe”, is irrelevant for the determination of paternity, for upon such a determination the putative father has both rights and responsibilities toward such child and the child herself an innate right to recognization of her biological father. At the turn of the century the Romantic mind expressed the following: "Not to swift the race; not to the strong the fight; not to the righteous, perfect grace; not to the wise the light.” (Henry van Dyke — 1911.) A much more realistic gentleman of perceptive nonlegal insight thereafter commented: "The race is not always to the swift, nor the battle to the strong — but that’s the way to bet.” (Damon Runyon.)
Motion to reargue/renew is denied except to the extent the court has considered the HLA blood report supra. Application to amend the complaint is denied. The court adheres to its previous decision in all respects.