Matter of L.M. v J.S. (2004 NY Slip Op 24428)

Matter of L.M. v J.S.

2004 NY Slip Op 24428 [6 Misc 3d 151]

October 28, 2004

Family Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, February 02, 2005

[*1]
In the Matter of L.M., Petitioner,
v
J.S., Respondent.
Family Court, Kings County, October 28, 2004

APPEARANCES OF COUNSEL

Joseph J. Mainiero, New York City, for respondent. Richard Colodny, Brooklyn, for petitioner.
{**6 Misc 3d at 152} OPINION OF THE COURT

Debra Silber, J.
The presumption of legitimacy does not attach to a husband who, absent equitable estoppel, has clearly rebutted any such presumption by living separate and apart from the mother and having obtained a legal separation or divorce prior to the child's birth. In this, the 21st century, with genetic marker tests available, there is no sound basis to hold otherwise.
Petitioner mother filed a paternity petition seeking an order declaring respondent J.S. the father of J.M.S., born June 27, 2003. It is undisputed that petitioner and her ex-husband, A.V., were married at the time the child was conceived, but had executed a separation agreement well before, in January 2002, and that a judgment of divorce was entered on April 30, 2003, after conception but before the birth of the child, which does not mention the unborn child, and that the ex-husband, whose name does not appear on the child's birth certificate, has also executed and submitted an affidavit of nonaccess covering the time of the child's conception. Respondent now objects to the court issuing an order for a genetic marker (DNA) test, arguing that the petitioner has failed to rebut the presumption of legitimacy of a child born to a married woman, and asks that the petition be dismissed. The motion is denied.
The circumstances as outlined do not, in this court's opinion, constitute a hard case, particularly in light of the age of this child and the judgment of divorce, but the circumstances outlined, and those of a similar nature, continually give rise to the same arguments. The court [*2]decided it would be helpful to publish a decision clarifying the issue.
Respondent movant cites a venerable quote from the eminent Chief Judge Cardozo: "A child born during marriage is presumed {**6 Misc 3d at 153}to be the biological product of the marriage and this presumption has been described as 'one of the strongest and most persuasive known to the law' " (quoting Matter of Findlay, 253 NY 1, 7 [1930]).
The quote is so often cited in its present form that one cannot blame counsel for its use. However, it is not only hard cases, but also incomplete quotations, which make for bad law. In actuality, the quotation cited ends not in a period, but rather, in a comma, after which it continues as follows: "and yet subject to the sway of reason." (Id.)
This full quote makes clear that each case must be considered on its facts, and does not support the proposition for which respondent has deployed it, in much the same manner that "love of money" rather than "money" puts quite a different light on what, if anything, lies at the root of all evil. The decision by Chief Judge Cardozo continues in a similar manner:
"Time was, the books tell us, when its rank was even higher. If a husband, not physically incapable, was within the four seas of England during the period of gestation, the court would not listen to evidence casting doubt on his paternity. The presumption in such circumstances was said to be conclusive. The rule of the four seas was exploded by the judgment in Pendrell v. Pendrell, decided in 1732. It was exploded, as Grose, J., observed in a later case 'on account of its absolute nonsense.' Since then the presumption of legitimacy, like other presumptions, such as those of regularity and innocence, has been subject to be rebutted, though there have been varying statements of cogency of the evidence sufficient to repel it." (Id. [citations omitted].)
Chief Judge Cardozo goes on to note that:
"What is meant by these pronouncements, however differently phrased, is this and nothing more, that the presumption will not fail unless common sense and reason are outraged by a holding that it abides. If husband and wife are living together in the conjugal relation, legitimacy will be presumed though the wife has harbored an adulterer. It may even be presumed though the spouses are living apart if there is a fair basis for the belief that at times they may have come together. Whether such a basis exists in any given instance is to be determined, however, in the light of experience and reason."{**6 Misc 3d at 154} (Id. at 8 [citations omitted].)
It should be noted that Findlay, often cited to support an unyielding interpretation of the presumption of legitimacy, held that the presumption was, in that case, rebutted by the facts. As has been noted, the presumption was never intended to suppress a truth and perpetuate a falsehood. (Sylvia B. v Ben., 70 Misc 2d 572, 576 [Fam Ct, Nassau County 1972].) On the facts of [*3]this case, common sense indicates that petitioner's ex-husband is not the father of this baby, and not one fact has been put before the court that would warrant any other conclusion.
The court must note that Findlay has been called into question in recent years. (See, e.g., Sylvia B. v Ben., supra.) However, this is not because the logic and reasoning of Chief Judge Cardozo has been affected by the passage of time, but rather, because the passage of time has brought about changes in science and technology. (Id. at 576.) In 1930, the principal, if not sole, determining factor in the application of the presumption was access by the husband to the wife. With the passage of time, blood tests and DNA tests have also acquired the ability to sway reason. (See, Anonymous v Anonymous, 1 AD2d 312 [2d Dept 1956].) The presumption of legitimacy, while still serving a laudable purpose, is nonetheless just another legal presumption to be used in the absence of conclusive evidence to the contrary. (Sylvia B. v Ben., 70 Misc 2d 572, 576 [1972].)
Moreover, respondent misstates the application of the presumption in Family Court Act § 532. The applicable language reads: "No [paternity] test shall be ordered, however, upon a written finding by the court that it is not in the best interests of the child on the basis of res judicata, equitable estoppel, or the presumption of legitimacy of a child born to a married woman." (Family Ct Act § 532 [a].) As such, the statute calls for a "best interests" analysis, in which the presumption, subject to the sway of reason, is but one of the factors to be considered.
Such an analysis is based upon public policy concerns. It has always been the policy of the State of New York to prevent the legal process from being used to render children fatherless. Those concerns remain as strong today as ever. Article 5 of the Family Court Act has been interpreted to bar Family Court from entertaining a petition seeking to illegitimate a child, without proving someone else's paternity. (See, Donald FF. v Jennifer FF., 273 AD2d 733 [3d Dept 2000].) While at one time an additional, if not superior, concern was to shield children, whenever possible, from the stigma of illegitimacy, the change in {**6 Misc 3d at 155}public perception has rendered that concern secondary, at best. (See, Michaella M.M. v Abdel Monem El G., 98 AD2d 464 [2d Dept 1984].) The presumption, when adopted, elevated legitimacy above all, and was applied even in cases where, because the husband's lack of access and the knowledge of the paramour's identity were not seriously contested, the issue of the child being rendered fatherless by the proceeding was not at issue. In the present time, the presumption of legitimacy still serves the State's public policy concerns, but its usefulness is now really that of a default position. As a result, there has been an erosion in the presumption's application even where it is found to exist. For instance, notwithstanding the existence of the strong presumption of legitimacy which affixes to the offspring of a legally valid marriage, public policy permits the use of blood testing in matrimonial actions to rebut the presumption. (Id. at 466; see also Dawn B. v Kevin D., 96 AD2d 922 [2d Dept 1983].) Nonetheless, the standards for overcoming the presumption, though softened over time by the sway of reason, remain high. The presumption of legitimacy may be rebutted only by clear and convincing proof excluding the husband as the father or tending to disprove legitimacy. (See, Fung v Fung, 238 AD2d 375 [2d Dept 1997].) In practice, this means that the presumption's implementation has sometimes stood in the way of such evidence (e.g., a [*4]paternity test) being obtained.
Nonetheless, even though the public policy concerns which underlie the presumption have loosened at a faster pace than has the willingness of the courts to find the presumption inapplicable, there are still times when the public policy concerns embodied in Family Court Act § 532 justifiably require that a court refuse to allow a blood test, even when the sway of reason might dictate otherwise. It is indisputable that the presumption, combined with a "best interests" analysis, and other factors, such as equitable estoppel, may result in the court refusing to allow a blood test. Thus, in David L. v Cindy Pearl L. (208 AD2d 502 [2d Dept 1994]), due to the presumption of legitimacy, combined with equitable estoppel in a "best interests" analysis, a paternity test was not allowed in a case where a child was four years old and had an established relationship with the husband. However, no such best interests questions are raised by the petitioner's ex-husband's nonexistent relationship with the child in the instant case. In Donald FF. v Jennifer FF. (supra), a blood test was not allowed and the case was dismissed where a husband sought to illegitimate a child without {**6 Misc 3d at 156}declaring anyone to be the father. In Fung v Fung (supra), the Court did not allow a blood test where the husband had waited an inordinately long time to raise the issue of his paternity, and where the results of the test could have illegitimated the child without settling the issue of paternity. (See also Sharon GG. v Duane HH., 95 AD2d 466 [3d Dept 1983].) However, the circumstances outlined in FF. and Fung have little relevance in a case such as this, where the test results, whatever they are, will not result in the illegitimating of the child. If a test were ordered in the instant matter, and it were positive, respondent could be established as the father; if the test did not result in the respondent being established as the father, the legal relationship between the petitioner's ex-husband and the subject child, such as it is, would remain undisturbed.
Moreover, in cases such as the instant one, a rigid application of the presumption to block a paternity test would actually dictate a result contrary to the public policy concerns which underlie the presumption; a putative father of an essentially fatherless child should not be allowed to use a legal fiction designed to protect the interests of children as a shield to block a procedure which provides the only hope of establishing the child's parentage.
It is well established that where there is no court decree of legal separation or divorce, access must be clearly and convincingly negated. (See, Matter of Margaret A. v Nicholas M., 39 AD2d 706 [2d Dept 1972]; Gray v Rose, 32 AD2d 994 [3d Dept 1969]; Matter of Donahue v American Radiator & Std. Corp., 27 AD2d 771 [3d Dept 1967].) Therefore, where there is a decree of divorce or legal separation, as there is in this matter, the court must infer, in the absence of evidence to the contrary (as existed in Backus v Backus [72 AD2d 893 (3d Dept 1979)], where there was testimony of continued sexual intercourse between the parties after separation), that access has been clearly and convincingly negated. To find otherwise would outrage common sense and reason, unless there was a fair basis for the belief that the legally separated spouses have "come together." (Matter of Findlay, 253 NY 1, 8 [1930].) In this case no such basis has been articulated. In fact, though no further evidence of nonaccess is necessary, the ex-husband, pursuant to Family Court Act § 531, has submitted an affidavit of nonaccess, a document, which, when coupled with the [*5]mother's testimony, is routinely accepted as clear and convincing evidence in uncontested paternity cases, provided that equitable estoppel does not apply.{**6 Misc 3d at 157}
It is also noted that there is a separation agreement and a judgment of divorce which does not mention the (then unborn) subject child. Unlike the situation in Backus v Backus, where the mother was never served with the complaint in the divorce action, and consequently did not appear, the court has to consider the child herein as already having been declared to be illegitimate in the eyes of the law; under such circumstances, no presumption of legitimacy could be said to apply.
Respondent asserts that petitioner, apparently by bringing the instant action, is seeking "to humiliate the respondent and destroy his reputation" and to "smear his name and reputation" and that as a result respondent "has been the victim of chicanery, fraud and outright deception." Respondent appears to be citing this as a grounds why he should not be named the father, whatever the evidence. If the respondent is indeed so outraged by this effort to "destroy his reputation," the court wonders why he does not welcome the opportunity to disprove these alleged falsehoods once and for all, and be thankful that he is not being denied such an opportunity because of equitable estoppel, the presumption of legitimacy, or res judicata. For many litigants, being granted the opportunity to disprove such allegations would not be in the child's best interests. Respondent is in that rare position where the opportunity to restore his reputation, and the best interests of the child, can both be served by conducting a paternity test, which is hereby ordered by the court.